# Memphis & Charleston Railroad Co. v. Grayson.

*Bill in Equity by Stockholder against Railroad Corporations, for Cancellation of Lease, Account, &c.*

1. *Lease of railroad.*—In the absence of special power under its charter, or power granted by the general statutes, a railroad corporation can not make a lease for twenty years or more, to another railroad corporation, of its road, property and equipment, with the use of its franchises : such contract is *ultra vires* and void.

2. *Estoppel against stockholder.*—A stockholder who has induced or participated in corporate action, or ratified or acquiesced in it, is estopped, as against the corporation, from impeaching the validity of such action ; but third persons can not claim the benefit of such estoppel, either against the corporation, or against a stockholder suing in its behalf, for the avoidance of an executory contract as *ultra vires;* and the corporation itself having repudiated its illegal action, the estoppel against the stockholder is removed.

3. *Conclusiveness of foreign judgment, as bar in pending suit.*—A decree rendered by a court of equity in Tennessee, in a suit between two railroad corporations, cancelling a lease by the complainant to the defendant, and ordering an account of profits, use of property, &c., not being impeached for fraud, is a bar to a suit pending in a court of Alabama, instituted by a stockholder of the lessor corporation against both of them, seeking a cancellation of the lease, an account, and an injunction against a threatened new issue of stock for the purpose of buying in the lease.   The relief prayed in each case being the same, the cause of action in the Alabama suit, though it was first instituted, is merged in the Tennessee judgment; and that judgment may ·be set up in an amended and supplemental answer, in the nature of a plea *puis darrein continuance.*

APPEAL from the Chancery Court of Madison.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 31st August, 1882, by John W. Grayson, a stockholder of the Memphis & Charleston Railroad Company, on behalf of himself and all other stockholders who might come in as parties with him, against the said corporation, and against the East Tennessee, Virginia & Georgia Railroad Company; and prayed the cancellation of a lease executed by the former to the latter company, an account for the use of property under the lease, profits received &c., and an injunction to prevent a threatened issue of new stock by the M. & C. Company for the purpose of raising money to buy in the lease.   After answer filed by the M. & C. Company, the cause was removed, on the petition of

[Memphis & Charleston R. R. Co v. Grayson.]

the East Tenn., Va. & Ga. Company, into the Circuit Court of the United States; but, on hearing in that court, it was remanded to the Chancery Court, and the decree remanding it was affirmed by the Supreme Court of the United States, November 29th, 1886. On the 4th June, 1885, a bill was filed by the M. & C. Company, in the Chancery Court at Memphis, Tennessee, against the East Tenn., Va. & Ga. Company, seeking a cancellation of said lease, an account, &c.; and a decree *pro confesso* having been taken against the defendant in that suit, an account was ordered and stated, and a decree entered declaring the lease void. In this case, an amended and supplemental answer was afterwards filed by each of the defendants, setting up the decree in the Tennessee case as a bar; and it was insisted by plea, that the plaintiff was estopped from maintaining the bill, because he had voted his stock for the lease. On final hearing, on pleadings and proof, the chancellor overruled the several defenses, and rendered a decree for the complainant as prayed; and this decree is here assigned as error.

D. H. POSTON, and MILTON HUMES, for the appellants. (1.) The complainant is estopped from impeaching corporate action for which he voted, or which he has ratified. The right to assail such action is limited to dissenting stockholders.—1 Mor. Corp., §§ 630-33; Cook on Stock, &c., §§ 683-5; *Berry v. Branch*, Miss., 4 So. Rep. 117; *Mayor v. Railroad Co.*, 22 Fed. Rep. 75. (2.) The decree gives no force or effect to the judgment of the Tennessee court, which was a merger of the plaintiff's cause of action, and, under constitutional provisions, was entitled to as full faith and credit in Alabama as in Tennessee.—Freeman on Judgments, 215-20; *Bank v. Wheeler*, 28 Conn. 433; *Barnes v. Gibbs*, 31 N. J. L. 217; *McGilvray v. Avery*, 30 Vt. 538; *Rogers v. Odell*, 39 N. H. 452; *Crawford v. Simonton*, 7 Porter, 110; *Cannon v. Brame*, 45 Ala. 262; *Railroad Co. v. Winn*, 14 Ind. 385; *Bank v. Brown*, 50 Maine, 214; *Jones v. Jamison*, 12 La. Ann. 35; *Brown v. Railroad Co.*, 13 N. J. Eq. 191; *Hunt v. Lyle*, 8 Yerger, 143; *Peak v. Ligon*, 10 Yerger, 468; Story's Conflict of Laws, § 609; *Mills v. Duryee*, 7 Cranch; 8 Johns. 221 ; 12 Johns. 99.

F. P. WARD, L. W. DAY, and D. D. SHELBY, *contra.* (1.) The lease was void, because it was *ultra vires*, and because it was to run for more than twenty years from the

day it was made.—*Penn. R. R. Co. v. St. L. R. R. Co.*, 118 U. S. 294; *Thomas v. Railroad Co.*, 101 U. S. 71; 31 Ala. 412.    (2.)    The complainant had a right to prosecute this suit.    The directors of the M. & C. Company had ignored the instructions of the stockholders' meeting held on the 15th November, 1881, and parties more interested in the lessee corporation had controlled the action of the lessor, to the extent of attempting an arrangement which, in effect, would give the lessee one half the stock of the lessor for a surrender of the lease.    The facts can not be denied, and are clearly established by the allegations and admissions of the parties in the Tennessee suit.    (3.)    But the decree in the Tennessee suit, rendered on a bill by the M. & C. Company substantially the same as in this case, and a decree *pro confesso* against the other corporation, and resulting in an account which showed no balance due, though the lease was declared void and cancelled, can not defeat the complainant's right to relief here, where his suit had been pending several years when the other bill was filed.—*Levy v. Memphis*, 8 Wall. 64; *Taylor v. Caryl*, 20 How. 583; *Peck v. Jenness*, 7 How. 612; *Smith v. McIver*, 9 Wheat. 532; *Voorhes v. U. S. Bank*, 10 Peters, 474; *Stout v. Lye*, 103 U. S. 66; *Stanton v. Embry*, 93 U. S. 548; *Gould v. Hayes*, 19 Ala. 483; *Opelika v. Daniel*, 59 Ala. 213; Hawes on Jurisdiction, § 45, note 4; 19 Fed. Rep. 342.

McCLELLAN, J.—In June, 1877, the Memphis & Charleston Railroad Company leased its road and equipment to the East Tennessee, Virginia & Georgia Railroad Company, for a term of twenty years, to commence in July thereafter.    In December, 1879—the lessee in the meantime being in possession of the property—a modification of the original lease was agreed upon by and between the two companies.    Both the original and amended leases were duly authorized and ratified by the stockholders of the M. & C. Company.    The complainant was owner of stock in the lessor corporation at the time of these transactions, and his shares were represented at the meetings which consummated the lease and ratified the modification of it above referred to, and were voted, with his knowledge and consent, for the lease and amended lease, respectively.    In November, 1881, the stockholders of the M. & C. Company adopted a resolution instructing their president and directors to treat the lease to the E. T., V. & G. Company as invalid, and to proceed to take

possession and control of the road. These instructions were not acted on. In August, 1882, the stockholders of the M. & C. Company passed a resolution authorizing the issuance of five millions of dollars of additional stock, and directed the same to be sold at eight cents on the dollar, and the proceeds thereof ($400,000) to be paid to the E. T., V. & G. Company in consideration of a surrender of said lease. The complainant was present at this meeting, and voted his stock, and protested against the adoption of this resolution; and immediately afterwards filed the present bill against the lessor and lessee corporations, alleging that the lease was *ultra vires* of the lessor corporation, and void; that the E. T., V. & G. Company was largely indebted to the M. & C. Company by reason of its possession, operation and use of the road and other property of the latter; and that the directors of the M. & C. Company were about to issue and sell said additional stock, and pay the proceeds thereof to the E. T., V. & G. Company in consideration of a surrender and cancellation of said pretended lease. The bill prays for an injunction against the M. & C. Company, restraining it from the issuance of said additional stock, and the payment of the proceeds thereof for a surrender of the lease, and against the E. T., V. & G. Company, restraining it from further control, use, &c. of the Memphis & Charleston road; for a receiver to take possession of the road-bed, equipment, &c. of the M. & C. Company, and operate the same for the benefit of the company's stockholders; that upon final hearing said lease and amended lease be decreed to be void, and ordered cancelled, and an account be taken between the defendant companies; and that the E. T., V. & G. Company be adjudged to pay the M. & C. Company whatever amount should be found due thereon for its use and occupation of the latter's road, or on account of inequitable division of traffic receipts between the two roads. No injunction was ever ordered pending the litigation until the final decree, which perpetually restrains the M. & C. Company from issuing the additional stock contemplated by the resolution of August, 1882, and from paying the proceeds thereof for a surrender of the lease. No receiver was appointed. The final decree declares the lease null and void; but no accounting is decreed, because it was made to appear by the record of a proceeding in a chancery court of the State of Tennessee between the M. & C. Company and the E. T., V. & G. Company, for the cancellation of the lease, an account, &c., that the parties had already accounted between themselves.

The correctness of the decree of the Chancery Court of Madison, in so far as it holds abstractly that the lease (original and as amended) was *ultra vires* and void, is not controverted on this appeal.  On this point, therefore, we content ourselves with a reference to some of the authorities which sustain the conclusion reached by the court below—the Memphis & Charleston Railroad Company having no special power under its charter, or under the general laws of the State, to lease its road to the East Tennessee, Virginia & Georgia Railroad Company.—*Pa. R. R. Co. v. St. L., A. & T. H. R. R. Co.*, 118 U. S. 294; *Thomas v. West Jersey R. R. Co.*, 101 U. S. 71.

The decree is attacked here on two grounds only:  *First,* that complainant was estopped to question the validity of the lease and the modified lease, by the fact that he was represented at the meetings of the stockholders which authorized or ratified them, and his stock was voted by his proxy, and with his knowledge, for both the original and the amendment thereof; and, *second,* that the decree of the Tennessee Chancery Court declaring the lease void, &c., was a merger of complainant's cause of action, and therefore a bar to the further prosecution of his bill in the Alabama court.

It is not seriously denied, that the complainant was at one time estopped by his conduct to prosecute this suit against the Memphis & Charleston Railroad Company.  The relation existing between him and that company was that of *cestui que trust* and trustee.  Acts of the corporation, participated, ratified, or acquiesced in by him as a shareholder, he has no right to call in question in any proceeding in form or effect adversary in its character with respect to his trustee, who in that regard is considered as executing his will.  It would be manifestly inequitable to the corporate entity, and to other stockholders, to allow him, so long as the course in which he has set the company continues to be the corporate policy, to appeal to the courts to have that policy reversed, and the company coerced into a different line of conduct. The shares owned by complainant having been voted by his representative, and, according to the weight of evidence, with his knowledge and consent, for the lease of July, 1877, and for the modification thereof resolved upon in December, 1879, he could not be permitted, while his trustee continued to be committed to the leases, to attack their validity. 1 Mor. Corp., §§ 630 *et seq.*; Cook Stock., §§ 683 *et seq.*

But the operation of this estoppel is between the trustee and the *cestui que trust*, the corporation and its shareholder. The latter can not proceed against the former, for doing that which he has directed to be done; but the company itself is not estopped to proceed against a third person, or other corporation, for the avoidance of an executory *ultra vires* contract; and it would be the duty of the company to so proceed.—Bigelow on Estoppel, pp. 466–468. This well-settled proposition demonstrates, that the estoppel does not obtain in favor of third parties, natural or artificial, and that they can not rely upon it, either against the corporation *eo nomine*, or against a stockholder suing for and in behalf of the corporation; for clearly it would be wholly immaterial to them, whether the assault on the *ultra vires* contract proceeded from corporate volition, so to speak, or from the volition of a stockholder, exercising his right to act for the corporation. The Memphis & Charleston Company having, as we have seen, before the filing of this bill, repudiated the leases of its property to the E. T., V. & G. Company, and instructed its directors to take possession of its road and equipment, the estoppel resting on complainant was thereby relieved.

As to the effect of the decree of the Chancery Court in Tennessee, a somewhat more difficult question arises. The bill in Alabama was first filed; the decree in Tennessee was first rendered. The suit in Alabama, while proceeding in the name of a stockholder in behalf of himself and all other stockholders who should come in and make themselves parties, and nominally against the Memphis & Charleston Company, as well as the E. T., V. & G. Company, was, in legal contemplation and effect, for and in behalf of the M. & C. Company, capable of resulting in no other relief than such as the latter company was entitled to have decreed against the E. T., V. & G. Company, and hence, for all practicable purposes incident to the present *status* of the case, is to be considered as a suit of one corporation against the other.—1 Morawetz Corp. §§ 256, 257, 271. The suit in Tennessee proceeded in the name of the corporation itself, and its main objects were the same as those sought to be attained in the Alabama suit—the cancellation of the leases of July, 1877, and December, 1879, and an accounting between the companies. The only relief insisted on in the domestic action, which was not prayed for in the foreign suit, was that the M. & C. Company be enjoined from the issuance and sale

37

of the five million dollars of additional stock, authorized by a meeting of stockholders held in 1882. Even this relief, while it could not be specially prayed in the Tennessee suit, was necessarily involved and effectuated in that case, since this stock was to be issued and disposed of only for the specific purpose of providing a fund with which to pay the E. T., V. & G. Company a bonus for a surrender of the leases; and the leases having been decreed void, and ordered cancelled, there was no longer any authorization for the issuance of the additional stock, and no such action threatened. The parties and the issues, we therefore conclude, were substantially the same in the two cases; and it only remains to be considered, on this branch of the appeal, whether the Tennessee court had jurisdiction to render the decree which was set up as a bar to the further prosecution of this cause in the Madison Chancery Court. It is, of course, well settled with respect to courts acting within one and the same territorial jurisdiction, and administering the laws of the same sovereignty, that the first to take cognizance of a controversy, or the control and custody of the property, can not be defeated of its right to proceed to a final determination of the dispute, or to a complete administration of the property, by the subsequent interposition of another tribunal; but, on the contrary, the pendency of the first action, properly pleaded, will abate the second. It may be conceded that jurisdiction taken by the court of one State to hear and determine a controversy, accompanied by the assumption of custody of the subject-matter in litigation, may be pleaded in bar of a subsequent proceeding, not merely ancillary in its character, in a court of another State, or of the United States. But, in each of the cases put, we apprehend the pendency of the former suit must be pleaded; and if not pleaded, and the court in which the later proceeding is instituted goes on to judgment, that judgment will bar the further prosecution of the older suit.

On the other hand, while there has been some diversity of adjudications on the point, it may now be considered as settled in principle, and by the weight of authority, that the pendency of an action in the courts of one State can not, except possibly in the case conceded above, be set up to defeat a subsequent action in a court of another State.—Wells *Res Adju.*, § 530; Story Con. Law, § 609, p. 832 (n. c.); *Hatch v. Spofford*, 22 Conn. 493; *Percival v. Hickey*, 18 Johns. 257; *Drake v. Brander*, 8 Texas, 352; *Brown v. Jay*, 9 John. 221; *Stanton v. Embry*, 93 U. S. 554.

[Memphis & Charleston R. R. Co. v. Grayson.]

Assuming, what is not questioned, that the Tennessee court had jurisdiction, otherwise than as affected by the pendency of this case, of the parties to and subject-matter involved in the bill of the M. & C. Company against the E. T., V. & G. Company, it would be an anomaly to hold that it could not render a final decree between those parties because of the pendency of a case in Alabama, between the same parties, and involving the same controversy, when the fact was never pleaded, and would have availed nothing if it had been pleaded, or to deny to its decree when rendered, pending the Alabama case, a tithe of the force and effect it would have had in the absence of the other suit. This decree is not attacked as fraudulent, or collusive. If it had been fraudulent, or the result of collusion between the two corporations, it would, of course, exert no influence upon the litigation pending in the Madison Chancery Court. Its sole alleged infirmity, however, results from the fact that it was rendered on a bill filed after the bill in this case was exhibited. The objection is untenable. "The *first judgment rendered* controls, whether the action in which it is reached be instituted before the other or not; and the rule applies where the first judgment is rendered in another State."—Wells *Res Adjudicata*, § 292; *Childs v. Powder Works*, 45 N. H. 547; *Duff v. Little*, 5 Watts, 130; *Casebeer v. Mowry*, 55 Pa. St. 422; *McGilvray v. Avery*, 30 Vt. 538; *Wood v. Gamble*, 11 Cush. 8; *Rodgers v. Odell*, 39 N. H. 452; *Stout v. Lye*, 103 U. S. 70–71. And the same rule prevails as to decrees. *Lowe v. Mussey*, 41 Vt. 392; *Peak v. Ligon*, 10 Yerger, 468.

The *gravamen* of the bill in each case, was the existence of the void leases of the M. & C. Company to the E. T., V. & G. Company, possession and use by the latter of the former's property under these leases, and the indebtedness of the lessee to the lessor on account of such possession and use. The Tennessee decree determined each and all of these matters. It cancels the leases, it enforces a surrender of the property, and it settles the accounts between the parties. After that decree, there was no lease in existence to be upheld or annulled by our court; no property of one party in the wrongful possession and enjoyment of the other, to be restored to its rightful control and use; nothing due from the E. T., V. & G. Company to the M. & C. Company, to be decreed to be paid by the former to the latter. Complainant's cause of action had been destroyed by being merged into the decree of a competent court, and there was nothing left for

[Johnson v. Durner.]

the Chancery Court of Madison to act upon.—Wells *Res Adju.*, § 530; *Barnes v. Gibbs*, 31 N. J. Eq. 317; Freeman on Judgments, §§ 215–221; *North Bank v. Brown*, 50 Me. 214; *Jones v. Jamison*, 12 La. An. R. 35.

Our opinion, therefore, is, that the court below erred in decreeing cancellation of the lease and amended lease, in adjudging or finding that the parties had accounted between themselves, and in enjoining the M. & C. Company from the issuance of the stock authorized in 1882. All of these matters had been expressly or necessarily settled by the Tennessee decree.

Unquestionably, however, the complainant, Grayson, had a good cause of action when he filed his bill. The answer which set up the foreign decree is, therefore, to be treated as a plea of *puis darrien continuance;* and the final disposition of this case, as to complainant's costs and reasonable expenses in the prosecution of his suit in behalf of the M. & C. corporation, should be had accordingly.

Reversed and remanded.

