# State *ex rel.* Perkins v. Montgomery Light Co.

*Quo Warranto Proceeding to vacate Charter of a Corporation.*

1. *Corporations; amendment of charter, when not unconstitutional.*— The act of the legislature, approved December 12, 1888, "To authorize corporations organized under the general incorporation laws of the State, or which have been chartered by an act of the General Assembly prior to the enactment of the general incorporation laws of this State of 1867, to alter and amend their charter," is not violative of section 5, article XIV of the State constitution, providing that "No corporation shall engage in any business other than that expressly authorized by its charter."

2. *Same; charter of gas company can be amended so as to allow the*

[State *ex rel.* Perkins v. Montgomery Light Co.]

*manufacture of electricity* —Where a corporation is chartered by a special act of the legislature to furnish a city with gas for illuminating purposes, its charter can be amended, under the provisions of the act approved December 12, 1888, so as to authorize such corporation to manufacture electricity and furnish it to said city and its inhabitants for illuminating purposes, without violating section 5, article XIV of the constitution.

3. *Same; constitutionality of statute authorizing amendment of charters.*—The act of the legislature, approved December 12, 1888, authorizing corporations previously organized to amend their charters, is not unconstitutional as violative of section 3, article XIV of the constitution, because it fails to provide that amendments thereunder could only be made upon condition that such corporations shall thereafter hold their charters subject to the provisions of the constitution; it is not necessary that the statute should express said condition, since a valid acceptance by a corporation of the benefits conferred by the enactment would imply an acceptance of such benefits upon the condition named in the constitution.

4. *Same; same* —Because the terms of the act of December 12, 1888, appear to be such as, if enforced, might impair the obligation of the contract between the State and corporations exercising the privileges granted thereby. said act is not, *per se*, unconstitutional and void, as violative of the State and Federal constitutions forbidding the State to pass any law impairing the obligation of contracts, since it is competent for the corporations and their shareholders to waive the protection of the constitution, and by their assent to, or acceptance of, the provisions of the act render it valid, even though otherwise it would have been invalid.

5. *Same; same* —Where a corporation has accepted the benefits and exercised the rights granted by the act of December 12, 1888, and its shareholders acquiesced therein for four years or more, their consent to such acceptance will be presumed; and the constitutionality of said act, as impairing the obligations of contracts, can not be attacked or questioned by one who has no concern whatever with its contracts.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This was a *quo warranto* proceeding upon the information of B. F. Perkins against The Montgomery Light Company; and sought to vacate and annul the charter of the said Montgomery Light Company, for, as was alleged in the information, offending against the laws of its creation, and exercising powers and franchises not conferred upon it.

The information alleged that the relator, Perkins, was a resident citizen of Jefferson county, in the State of Alabama; that The Montgomery Gas Light Company

was incorporated by a special act of the General Assembly of Alabama, passed at its session of 1853–4; that by the terms of the charter so granted, the place of business of said company was in the city of Montgomery, and the said company was authorized to furnish the said city and its inhabitants with gas for illuminating purposes, and that it was only authorized to exist for that end and purpose; that for many years prior to 1889, The Montgomery Gas Light Company carried out the provisions of its charter, but that in 1889 the said corporation, acting by and through a majority of those in interest therein, obtained, upon a petition filed in the probate. court of Montgomery county, an amendment to its charter, changing its name to "Montgomery Light Company," and giving it authority to manufacture and furnish electricity to the city of Montgomery and its inhabitants for purposes of illumination; and authorizing it to increase its capital stock to two hundred thousand dollars, and execute bonds to the amount of two hundred and fifty thousand dollars, which were to be secured by mortgage on all of its property. The information further alleged that the probate court of Montgomery county was without any authority to make such amendment, but that it did undertake to do so; and that ever since that time the corporation has exercised the additional franchises and powers by operating an electric light plant, and furnishing electricity to the city of Montgomery and its inhabitants, and increased its capital stock, issuing certificates therefor, and issued bonds to the amount of two hundred and fifty thousand dollars, which were secured by mortgage on all of its property; and that the attempt to change its charter was without authority of law and void.

It was finally averred in said information that the said Montgomery Light Company had offended against the laws of its creation in this : (a) In unlawfully increasing its capital stock.    (b) In creating a bonded indebtedness of two hundred and fifty thousand dollars, secured by a mortgage on all of its property.    (c) In exercising a franchise not conferred by law, by operating an electric light plant, and charging and taking toll for the same.    A writ was issued upon this information, reciting the facts alleged in the information, and citing the Montgomery Light Company to appear before the court

and show cause, if it had any, why its charter should not be revoked, and its corporate existence annulled.

In response to said writ the respondent moved to quash the same, on various grounds, chief among which were the following : 1st. Because said B. F. Perkins, on whose information the writ was sued out, was not joined as plaintiff with the State. 2d. Because it was not shown or averred in the information on which the writ was issued, or in the recitals of the writ, that the said Perkins had any interest in the subject matter of the proceedings. 3d. That it was not averred that the alleged acts, by which it amended its charter, were not done pursuant to the provisions of the law authorizing it to make such amendment. 4th. That neither the information nor the writ averred facts which showed that the probate court was acting without authority in granting the amendment to its charter. 5th. That a copy of the act of the legislature, incorporating respondent, was not attached to the information. 6th. That it did not appear that the capital stock of the corporation was not increased in the mode and manner provided by law. 7th. That it did not appear that the bonded indebtedness was not increased in the mode provided by law. 8th. That it is not shown but that the respondent acted in good faith, and with the honest belief that it had the right to do the acts complained of.

On the submission of the cause, judgment was rendered dismissing the proceedings, as is shown by the following extract from the judgment entry : "It is ordered and adjudged by the court that the application filed in this case be and is hereby dismissed : 1st. Because the questions involved being the constitutionality of a statute, relator should show that he is a stockholder, or has some right affected by the statute; 2d, the amendment complained of is auxiliary to the original purpose of the corporation."

LEA & BELL and BROOKS & BROOKS, for appellant.— The relator had the right to maintain *quo warranto* to vacate the charter of the respondent corporation.—*The State ex rel. Sanche v. Webb*, 97 Ala. 111. No private corporation can exercise any corporate powers except those expressly given. Whatever is not unequivocally granted in its charter, is taken to have been withheld.—*Waddill v.*

*Grand Lodge*, 36 Ala. 313 ; *Marion Sav. Bank v. Dunkin*, 54 Ala. 471 ; *Dauphin St. Railway v. Kennedy*, 74 Ala. 589 ; *Thomas v. Railroad Co.*, 101 U. S. 71 ; *Holyoke Co. v. Lyman* 15 Wall. 511 ; *Minturn v. Larue*, 23 How. 435 ; *Turnpike Co. v. Illinois*, 96 U. S. 63 ; 1 Beach on Priv. Corp., 444–445 *et seq.*; *Railroad Co. v. Cable Tramway Co.*, 30 Fed. Rep. 349 ; Thompson on Law of Electricity, § 37; 122 Penn. St. Rep. 175.

The constitution of the State and of the United States forbids the enactment of any law which vests in any majority of the stockholders the power to change or alter the original business of the corporation. The act of December 12, 1888, is void because it impairs the obligation of the contract by the original stockholders of the corporation mentioned in it, in this, it gives to a majority the absolute right to change the name, aim and object of the corporation, without the assent of the minority.—*Zabriskie v. H. N. Y. R. Co.*, 18 N. J. Eq. 179 ; *Kean v. Johnson*, 1 Stockton, (N. J. Eq.) 401 ; *Black v. Delaware R. & C. Co.*, 24 N. J. Eq. 455; *Clearwater v. Meredith*, 1 Wall. 40 ; *N. O. &c. v. Harris*, 27 Miss. 517; Morawetz on Priv. Corp., §§ 434, 196, 202, 314; Beach on Priv. Corp., §§ 23, 24 ; *Mowrey v. Indianapolis R. Co.*, 4 Biss. 78; *Stevens v. Rutland & B. R. Co.*, 29 Vt. 545 ; 1 Amer. Law Rep. 154 ; Wood's Railway Laws, § 39 ; *Mobile &c. R. R. Co. v. Kennerly*, 74 Ala. 566 ; *Broadbent v. T. S. & A. Asso.*, 45 Ala. 170 ; *Boyd v. State*, 46 Ala. 329; *Micou v. Tallassee Bridge Co.*, 47 Ala. 652 ; *Livingston v. Lynch*, 4 Johns. Ch. R. 573 ; *Middlesex T. Corp. v. Locke*, 8 Mass. 268.

TOMPKINS & TROY, *contra*.—Courts do not pronounce statutes unconstitutional except when it can not be avoided, and no individual will be allowed to raise the question of the constitutionality of an act except in a case where it is sought to be enforced against him, his property, or his rights. No mere volunteer, whose rights are not affected by it, can have the question decided. For when an act is alleged to be void because it injuriously affects private rights, it is to be deemed as void only as against those affected by it. It is not to be considered void as to the public generally.—*Wellington v. Petitioners*, 16 Pick. 87 ; *Jones v. Black*, 48 Ala. 540 ; *People v. Brooklyn*, 89 N. Y. 75; Cooley on Con. Lim.,

[State *ex rel.* Perkins v. Montgomery Light Co.]

163-4; *Moore v. New Orleans*, 32, La. Ann. 726; *Sinclair v. Jackson*, 8 Cow. 543; *Williamson v. Carlton*, 51 Me. 449; *DeJarnett v. Haynes*, 23 Miss. 600.   This being the rule, where the act complained of is done under the authority of the *prima facie* act of the legislature, an act, which, if invalid, is only invalid because it affects private rights, no person whose rights are not affected thereby can be heard to complain of the validity of the law.—1 Beach on Corp., § 58; 2 Morawetz, § 1028; 4 Amer. & Eng. Encyc. of Law, 306; *People v. Bristol*, 23 Wend. 236.

The amendment of the charter by the respondent corporation was such an one as the corporation could make in the mode and manner of carrying on its business for the furnishing of lights for use.—1 Morawetz on Corp., §399; 1 Beach on Corp., § 41; *Delaware R. Co. v. Tharp*, 1 Hous. 149; *Irvine v. Turnpike Co.*, 2 Pen. & W. 466; *Sprague v. Ill. River R. R. Co.*, 19 Ill. 174; *Banett v. A. & S. R. R. Co.*, 13 Ill. 504; *B. & N. Y. R. R. Co. v. Dudley*, 14 N. Y. 336; *S. &. S. P. R. Co., v. Thatcher*, 11 N. Y. 102; *Dayton &c. R. Co v. Hatch*, 1 Disney, 84; *Fry's Ex. v. L. &c. R. R. Co.*, 2 Metc. (Ky.) 322.

HEAD, J.—This is a proceeding in the nature of *quo warranto*, to vacate the charter of the respondent corporation, under sections 3167 *et seq.* of the Code of 1886. It has its basis mainly in subdivision 5 of section 3167, which authorizes judgment of forfeiture when a corporation "exercises a franchise or privilege not conferred on it by law." The statute prescribes two methods of procedure to enforce these forfeitures. One is that the judge of the circuit, wherein the corporation is located, whenever he has reason to believe any of the specified acts or omissions can be proved, and it is necessary for the public good, must direct the solicitor to bring the action. When so done the proceeding is alone in the behalf of the State for the public good. The other is, that the action may be brought on the information of any person giving security for the costs, to be approved by the clerk of the court; in which case the informant must be joined as plaintiff with the State. If the informant dies pending suit, another, giving security for costs, may be substituted in his place; but if no person is so substituted the action abates. The present proceeding is of the latter class, except that the requirement

that the informant be joined as plaintiff with the State seems to have been overlooked and was not conformed to, the action being instituted in the name of the State alone, "on the relation of B. F. Perkins."

The respondent corporation was chartered by special act of the General Assembly, in the year 1853, by the name of The Montgomery Gas Light Company, with the city of Montgomery, Alabama, as its place of business, and was empowered to furnish that city and its inhabitants gas for illuminating purposes, which was the sole object and end of the incorporation. The business of the company was legitimately carried on, within corporate powers, until the year 1889, when the grievances complained of in the information began. On December 12th, 1888, the General Assembly of Alabama passed an act, "To authorize corporations organized under the general incorporation laws of the State, or which have been chartered by an act of the General Assembly prior to the enactment of the general incorporation laws of this State of 1867, to alter and amend their charter;" and, in this act, it is provided that not less than three-fourths in number of the stockholders of any such corporation, holding not less than two-thirds in value of the stock thereof, may, in specified cases, file in the office of the judge of probate of the county in which the corporation has its principal place of business, a verified declaration, in writing, signed by them, setting forth, 1st. When said corporation was organized, its name, what changes, if any, are desired to be made in such name, and the amount of its capital stock which has been subscribed for and taken. 2d. The names of the stockholders signing the same, and the amount of stock held by each. 3d. The purposes of the corporation and the nature of its business, as the same is set forth in the original declaration, and the alterations or amendments thereof desired. 4th. The amount of the capital stock as shown by said original declaration, and the amount to which it is proposed to decrease such capital stock, if a decrease is proposed. There is a proviso limiting, to some extent, the powers to be derived by such alterations, not material to the present case.—Acts, 1888-89, p. 20. Proceeding strictly under and in accordance with this act, assuming its validity, the respondent, in 1889, in the probate court of Montgomery county, changed its name from "The

[State *ex rel.* Perkins v. Montgomery Light Co.]

Montgomery Gas Light Company" to "The Montgomery Light Company"; acquired the authority to manufacture electricity and furnished the same to the city and its inhabitants for purposes of illumination; had its capital stock increased to about $200,000, "from amount fixed by its first named charter," and acquired authority to execute bonds to the amount of $250,000, and to mortgage all its property to secure the payment thereof; since which, the company has exercised the franchise of producing and furnishing electricity, as aforesaid, having established the necessary plant and appliances for that purpose. It has increased its capital stock to $200,000, and issued certificates for the same; has issued its bonds in the sum of $250,000, and its mortgage on all its property to secure them. The relief the informant seeks is based alone upon the proposition that the act above noticed is violative of section 5, Art. XIV of the constitution, that "No corporation shall engage in any business other than that expressly authorized by its charter;" and in connection therewith section 3, Art. XIV, which forbids the General Assembly to alter or amend the charter of any corporation existing at the adoption of the constitution, or to pass any general or special law for the benefit of such corporation, except upon the condition that such corporation shall therafter hold its charter subject to the provisions of the constitution; and especially as violative of those provisions of the Federal and State constitutions which forbid the State to pass any law impairing the obligation of contracts. In argument of appellant's counsel the attack is made solely from the last named position, but we will notice the others as well.

We observe first, that section 5 of Art. XIV can exert no influence upon this controversy, for, if we go to the verge of holding that, under that section, necessarily implied corporate power can not exist, and that every corporate act must find its authorization in express terms in the charter, the acts now complained of are expressly authorized in respondent's charter, if the alterations and amendments above noticed can be otherwise upheld as valid.

Next, we find, in section 3 of Art. XIV, express recognition of the right of the General Assembly to alter or amend the charter of an existing corporation, or to pass

any general or special law for its benefit, upon condition only that such corporation shall thereafter hold its charter subject to the provisions of the constitution. We take it that it would not be contended that the enactment, under these provisions, must express the condition above mentioned. A valid acceptance by the corporation of the benefits conferred by the enactment would imply acceptance upon the condition named in the constitution. Then, suppose all the stockholders of the respondent corporation had joined in the petition to the probate court for the enumerated powers, in pursuance of the act of 1888, could it be seriously questioned that the amendments of its charter and the enlargements of its powers were constitutionally accomplished, so far as the provision of the constitution under consideration is concerned? Certainly not; and if not, then we demonstrate that the act of 1888 is not *per se* violative of the constitutional provision in question. It is, in that regard, a valid enactment open to every existing corporation, in a lawful way, to avail itself of its provisions; and the only show of argument appellant can now make is, that it does not affirmatively appear, on the face of the probate court proceeding, that *all* the stockholders *applied for* or *consented* to the grant of the enlarged powers. What may have been done by the stockholder, by positive act, at the time, he may do by subsequent express ratification or silent acquiescence, and, in respect of acts which may be made lawful and efficacious by ratification, either express or by acquiescence, of another, it is the legal right of such other so to ratify, which right no outsider can deprive him of. Then, in the present case, suppose it be true, in point of fact, that every shareholder in the respondent company was, from the first, fully informed of the enlarged powers, was entirely satisfied with them, believed them to be beneficial to him, and day after day, through all these years, has acquiesced in, and confirmed the same, is there any so bold to say there has not been a lawful, constitutional acceptance by the corporation of the provisions of the act of 1888, on the condition named in the constitution? And it is too clear for controversy, that, with the light this kind of proceeding, put on foot by a mere informer, is capable of shedding, we must presume such a ratification; for if we do not, and grant the prayer of the in-

formant, we take the risk of infringing the legal right of the minority shareholders to adopt by ratification, express or silent, that which was done by the majority in their behalf. Indeed, it may well be inquired if a shareholder himself, having full knowledge of the facts, after four years acquiescence in what has been done for him, standing by to affirm, if the new venture proves successful, and disaffirm if unsuccessful, would be permitted now to come before the courts, even in a direct proceeding, to prohibit the usurpation of power by the company or to vacate its *ultra vires* acts done in the exercise of the new venture. The authorities upon this question are abundant, and would seem to leave the course of such a complaining stockholder not free from difficulty.—3 Herm. Estoppel, § 1135, p. 1323 ; Cook on Stockholders, § 731 ; *Taylor v. S. & N. R. R. Co.*, 4 Woods 575; *Kelley v. R. R. Co.*, 24 Amer. & Eng. Ry. Cases 27 ; *Cozart v. Ga. R. R. & B. Co.*, 54 Ga. 383 ; *Alexander v. Searcy*, 8 S. E. Rep. 630 ; Beach on Priv. Corp., 431 ; 2 Mor. on Corp., § 631 ; *M. & C. R. R. Co. v. Grayson*, 88 Ala. 572.

What we have said applies with greater force, if possible, to that feature of appellant's contention resting upon the "contract" clauses of the Federal and State constitutions. As we said, in considering the other constitutional objections, it is a mistake to say that the act in question is unconstitutional and void *per se*, because its terms appear to be such as, if enforced, might impair the obligation of the contract between the State and respondent's shareholders, for the reason, as we have said, that it is competent for the shareholders to waive the protection of the constitution, and by their assent to, or acceptance of, the provisions of the act, render it valid, though otherwise it would be invalid ; and it is always open to inquiry in a case like this, involving, so far as contractual obligations are concerned, merely the private rights of individuals, whether there has been such assent or acceptance.—Cooley Con. Lim., marg. p. 181 ; *M. & O. R. R. Co. v. State*, 29 Ala. 573 (586); 3 Amer. & Eng. Encyc. of Law, 744, note 1. And the assent of a corporation may be inferred from such acts or omissions as would raise a similar presumption in the case of natural persons.—3 Amer. & Eng. Encyc. of Law, *supra*, and cases cited in note. These contract clauses are intended alone for the protection of the private rights

of contracting parties. No principle or element of public State policy is intended to be conserved by them. A person, the terms of whose contract would be materially changed by the enforcement of a given legislative enactment, may conceive the change beneficial to him and waive the unconstitutionality of the act; and in such case, it would become no one, not even the State itself, to interfere and allege it. The courts will not suffer such interference. There is, in essence, no contravention of the constitution, except upon complaint of the injured party. If he accepts it, it is a valid enactment. As we have already said, as the question now comes before us, we can not do otherwise than presume that the shareholders have acquiesced in what was done by the majority, because they have the right to ratify it, and they are not complaining. We must not interfere with that right. This law of *quo warranto* as applicable to abuse of corporate power and usurpation of corporate franchise was never designed to enforce or protect the private contractual rights of persons, involving no public detriment. Such persons are supposed to be able to take care of themselves. Here is a case of a person coming into court, and bringing the State with him, if we will, and invoking the unconstitutionality of an act which has received the solemn approval of the legislative and executive departments of the State, and been put in operation by that branch of the judicial department appointed to enforce it, upon no other plea than that the private contracts of other persons, with which he has no concern whatever, may have been impaired by the act. To give sanction to the proceeding would be to pervert the law, under which it is attempted to be maintained, to ends never intended.

Affirmed.