## CARTER v. MUTUAL BENEFIT LIFE INS. CO.

5 Div. 196.

Supreme Court of Alabama.
May 16, 1935.

G. C. Walker, of Clanton, and Huddleston & Jones, of Wetumpka, for appellant.

Lawrence F. Gerald, of Clanton, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

FOSTER, Justice.

This is a suit by the beneficiary of a life insurance policy. The insured died after making default in the full payment of the second premium. By its terms the policy became null and void upon such default, except as provided in it. Upon such default, two alternatives were open to insured, both conditioned upon a surrender of the policy within one month from default, and thereupon he could receive either (1) its cash surrender value, or (2) a paid-up policy. A table showed the minimum amount of the cash surrender value guaranteed at the end of the first year to be $7.26 per thousand, which would be $14.52 for this policy for $2,-000. The table also showed that the minimum amount of a paid-up policy at that time would be $15 per thousand or $30, for this policy.

The surrender value must be computed as stated in another paragraph, so that it would be equal to the entire reserve less a surrender charge of 1 per cent. of the amount insured, but which surrender charge would be diminished proportionately so as to be eliminated at the end of the third policy year, and which was made manifest also by the table referred to. There should also, of course, be deducted the amount of any indebtedness owing by insured.

Another provision is predicated upon a failure to surrender as provided for in one or the other of the alternatives above mentioned. In the event of such failure to surrender, with an exercise of the election provided for, the insurance is automatically extended for the amount of the policy (to wit, $2,000); the term not there defined. The amount of the paid-up policy (conditioned upon a surrender of the policy) and the term of the extended insurance (not conditioned

upon its surrender) are each controlled by the amount of the cash surrender value. A preceding paragraph provided how the cash surrender value was to be ascertained. When that is done, the term of the extended insurance is computed upon that basis.

The fact that extended insurance exists without a surrender of the policy, and the right to the cash surrender value exists only upon its surrender, in no respect affect the manner in which the surrender value is computed. Its computation is in a separate and distinct policy provision, and not dependent upon whether the policy is surrendered. If the policy is surrendered, the surrender value thus computed is available for one of two alternatives. If it is not surrendered, that same amount fixed by the same method is computed for a different purpose (extended insurance).

The term "surrender charge" is not defined in the policy, nor by the evidence. Nor does it appear what service or circumstance is its justification. We think it is immaterial that it is called a surrender charge, rather than that no term should be applied. We have read many cases where policies are considered which provide for such a deduction, without naming it. In some the evidence was that it is an actuarial term, and in them all it is so calculated whether so called. Inter-Southern Life Ins. Co. v. Zerrell (C. C. A.) 58 F.(2d) 135, 137; Moss v. Ætna Life Ins. Co. (C. C. A.) 73 F.(2d) 339; Lamar Life Ins. Co. v. Minor, 170 Miss. 223, 154 So. 542; Mutual Benefit Life Ins. Co. v. O'Brien (Ky.) 116 S. W. 750. We may as well conjecture that it is intended to care for the initial expenses of the company incident to the procurement and issuance of the policy, and which is amortized by the payment of the first three annual premiums, as to conjecture, as appellant does, that it was intended to compensate the company for services made necessary by physical surrender of the policy. But whatever may be the reason for it, it is distinctly provided that the term of the extended insurance shall be controlled by the amount of the cash surrender value (though the policy is not surrendered), and it is also distinctly provided that the value shall be ascertained by deducting 1 per cent. of the amount of the policy from the reserve and computed upon that basis. It is immaterial what name is applied to the amount thus deducted. Such clarity of stipulation eliminates all idea of construction, and leaves to the court the duty to give it effect as thus expressed.

It is not definitely fixed by the table incorporated in the policy. That table does not purport to be exact, but shows that it is a statement of minimum values only. So that the cash surrender value must be computed according to the formula prescribed, provided it shall not be less than that stipulated in the table. Lamar Life Ins. Co. v. Minor, supra.

There is a modicum of difference between the terms of the policy we are considering, and those considered by the Mississippi Supreme Court in New York Life Ins. Co. v. Blaylock, 144 Miss. 541, 110 So. 432. That court seemed to emphasize that difference, though we do not think it is important. They also seemed to think that the surrender charge was compensation for services incident to the physical surrender of the policy, not justified otherwise. That policy provided for an affirmative act on the part of the insured by surrendering the policy and electing to accept (a) cash surrender value, or (b) extended insurance, or (c) paid-up insurance. In such event the extent of any of such alternatives was to be computed by deducting from the reserve a "surrender charge" as specified. The insured did not surrender the policy or attempt to exercise the election so provided. His situation was therefore controlled by another clause which provided that if the insured did not surrender the policy and claim either option (a) or (c), the insurance would be continued as in option (b) (extended insurance). The court said that they did not understand this to mean that the surrender charge applied where the policy merely lapsed, and clause (b) was automatically operative; that the surrender charge was justified only when the policy was surrendered. In other words, that the surrender charge was for services incident to surrendering the policy, and if insured elected to have extended insurance by surrendering it, the charge was provided for, but if he made no election, the insurance was automatically extended without a surrender of it, and therefore with no service for which the charge could be made, and thereby created a longer term of such insurance.

In the first place we think that is a misconception of what such a charge is intended for. It also seems to us to lead to an anomalous situation. So that the extent of the term of the extended insurance would be controlled by the act of a physical surrender of the policy to the company after default.

In respect to the policy we are considering, the matter of extended insurance is not

stated as an option in any event, but is wholly automatic, and occurs only when insured has not surrendered the policy for either cash or a paid-up policy.

The same argument adopted in the Mississippi case was urged in Inter-Southern Life Insurance Co. v. Zerrell, supra. It was said: "A careful reading of the terms of the policy indicates that the cash value is the same in case of lapse as it is in case of surrender of the policy under the option provisions, and that there is no basis for the application of the rule of construction sought to be invoked." See, also, Mutual Benefit Life Ins. Co. v. O'Brien, supra; 37 Corpus Juris, 514; Security Life Ins. Co. v. Watkins, 189 Ky. 20, 224 S. W. 462.

The agreed facts are that default was made June 14, 1931; that the entire reserve on that day was $34.52. The surrender charge was fixed by the contract at 1 per cent. of the amount insured, equal to $20; so that the cash surrender value was then $14.52, when so computed, which is the amount of the guaranteed minimum set out in the table. It is also agreed that based on that value insured died at a time subsequent to the expiration of extended insurance. Without deducting the charge of $20, the term of the extended insurance would not have expired. We think the court properly construed the policy so that the surrender value was $14.52, and the term of extended insurance expired before the death of insured.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.