182 So. 18
STATE ex rel. HIGHSMITH v. BROWN SERVICE FUNERAL CO.

6 Div. 293.

Supreme Court of Alabama.
June 9, 1938.

Erle Pettus and Thos. E. Skinner, both of Birmingham, for appellant.

Lange, Simpson & Brantley and Coleman D. Shepherd, all of Birmingham, for appellee.

FOSTER, Justice.

This is a quo warranto proceeding instituted upon the relation of J. H. Highsmith in the name of the State to test the right of appellee, a domestic corporation, to exercise the franchise rights supposed to be granted by an Act of the Legislature, entitled "An Act To further define, regulate and license mutual aid, benefit or industrial companies or associations," approved June 10, 1935. Acts 1935, page 165. Security for costs was given as required by section 9930, Code.

Appellee claims that relator shows no interest in the controversy, and that one without interest cannot attack an act of the Legislature because it is unconstitutional, which is the attack here made.

That general principle is certainly correct, but it does not apply when the statute expressly confers the right as by section 9930, Code, to the extent that it is not merely to conserve the private rights of some one not complaining. It is not so applied as to refuse quo warranto for this purpose in State ex rel. Crumpton v. Montgomery, Excise Com'r, 177 Ala. 212, 59 So. 294.

We do not think the remedy provided by section 8344, Code, is exclusive of that of quo warranto. Fisher v. Bankers' Fire & Marine Ins. Co., 229 Ala. 173, 155 So. 538.

We see no reason why the merits of the question sought to be settled should not be considered and determined as fully argued by both parties, except as we will hereafter refer to a limitation upon the inquiry. The petition shows that the plan of business by respondent is what should be termed industrial insurance within the Act of 1935, and as ordinarily defined. 31 Corpus Juris 966.

Respondent claims that, though the petition does not state just what law governed its incorporation, the provisions of Article 10 of chapter 274, and beginning with section 7047, Code, and Article 5, chapter 306, beginning with section 8396, have application, because they provide for the incorporation and charter powers and obligations of industrial as well as mutual aid and benefit companies.

Section 8347, Code, has certain requirements as to reserves applicable generally to life insurance companies, and different from section 7061, Code, applicable to reserves for mutual aid, benefit and industrial companies.

The Act of 1935, supra, virtually rewrites Article 5 of chapter 306, in which is section 8396, and makes it include more specifically burial as a form of insurance there regulated such as respondent writes. All laws in conflict are to that extent repealed. Section 6 of the Act relates to the reserves required to be kept by such company. It is this feature of the Act now under attack. As to policies written after its enactment, the reserves are to be computed as in section 8347, Code. As to policies written before its enactment, the computation is on a different basis extending over a period of ten years.

The contention is made by appellant that it therefore changes the computation provided by section 8347, Code, applicable to policies then in existence. That the title does not indicate such a purpose, and that section 45, Constitution, is violated, and that it deprives the policy-holders theretofore issued of the benefits of section 8347, Code.

The question in both aspects may be largely treated with one discussion in view of the opinion we have reached as to its merits. We assume as true many of the propositions stated in briefs as well supported, but do not think they are controlling in the light of the result here reached. In the first place, we do not think that both sections 7061 and 8347, Code, were intended to have joint operation in their require-ments as to the reserves to be kept by industrial companies. The former has particular reference to such companies, while the latter applies to life insurance generally. True, industrial insurance is a form of life insurance, but it is distinctive in character and is classed in the Code with mutual aid and benefit insurance, though it has features distinctive from them as well as from ordinary and other old line insurance.

Under well settled rules of construction, those statutes which prescribe specifically for such forms of insurance may be held to apply to the exclusion of those which apply to life insurance generally. Section 7061, Code, makes the computation for reserves on a basis entirely different and probably less onerous than section 8347, Code. It is not probably to be assumed that the Legislature intended for industrial insurance companies, though they are life insurance in one form, to maintain reserves according to the requirements of both sections, thereby increasing the burden of such companies over that of other life insurance. If only one should be given effect, it is appropriate to hold that it should be section 7061.

There is no allegation that this company has been required by the insurance department or has voluntarily computed and set up reserves on the basis of one or the other or both sections. Petitioner is content to stand on the assumption that section 8347, Code, applies, and therefore that reserves have been or are due to have been set up as there provided, with no allegation in that respect.

Based upon that assumption, appellant argues that the Act of 1935 changes the basis for reserves as to policies then existing so that the amount applicable to them will for ten years be less beneficial than as provided in section 8347, Code, though more beneficial than that provided in section 7061. Upon the further assumption then that the reserves thus required to be set up add a distinctive value to such policies on the basis of which the table set out in them fixing paid up insurance is predicated, and that the Act of 1935, supra, reduces the amount thereafter required as to them, thereby reducing their value, appellant argues that if the Legislature has such right, it cannot enact retroactive legislation to that extent without an indication to that effect in the title.

If the Act is thus defective in a failure in this respect to comply with section 45,

Constitution, and if the elimination of its retroactive effect had the result of destroying the Act in its entirety, petitioner probably has the right in this quo warranto proceeding to test the corporate rights of defendant attempted to be conferred by the Act as a whole. But if the Act only looks to the future in its operation and does not impair any existing right, it cannot be said to be retroactive so as to be necessary to declare it so in the title.

■■■ So we meet the question of whether *existing policy-holders of industrial companies issued prior to the Act of 1935 are injuriously affected by it.* If such Act merely adds to a status then existing, it is not retroactive. If section 7061, and not 8347, Code, fixes the right to require reserves, the existing policy-holders merely have thereby benefits more advantageous than required theretofore. The Act then would only look to the future in making its requirements for future operation, and to the past only for information on which a computation is to be made to ascertain an amount to be effective for such future operation. A law is not retroactive merely because it looks to the past for such purpose. License fees are often so set up.

Assuming that appellant is correct in his contention that if an act is to have retroactive operation, the title should so indicate, it is not applicable when it merely looks backward for facts on which to base a computation for future operation.

So in State ex rel. Brassell v. Teasley, 194 Ala. 574, 69 So. 723, Ann.Cas.1918E, 347, this point was made in respect to an act which fixed the qualifications of an office holder as dependent upon his failure to hold some other certain office within four years next preceding. The point was made, as here, that it was retroactive and not in the title as thus operative, and violative of section 45, Constitution. This argument was made, as here, also upon the authority of Lindsay v. United States Savings & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L.R.A. 783. In that case the act undertook to validate transactions which, when they occurred, were void as to usury. The title did not indicate such purpose if the authority existed. But it was differentiated with much elaboration, and held inapplicable in the Brassell Case, supra. This is distinguishable clearly from an act which imposes unanticipated and unfavorable alterations of a *legal status as to existing contracts* (Wallace v. Ball, 205 Ala. 623, 88 So. 442),

or marital conduct occurring theretofore as a ground for divorce, when not so when such conduct took place. Barrington v. Barrington, 200 Ala. 315, 76 So. 81.

It is not our purpose to enter a discussion of what would be the retroactive effect of this act, if the existing policy-holders had been prejudicially affected by the change. This would lead into a consideration of the legal status of reserves in their relation to policy-holders.

Appellant bases his assumption on the theory that they create a right in policy-holders, probably because they affect their surrender value, paid up and extended insurance. It seems to be true that such values are computed on reserves; and in some states and by some contracts they give legal rights. See the discussion in Carter v. Mutual Benefit Life Ins. Co., 230 Ala. 389, 161 So. 446; U. S. Life Ins. Co. v. Spinks, 126 Ky. 405, 96 S.W. 889, 103 S.W. 335; Greer v. Aetna Life Ins. Co., 225 Ala. 121, 142 So. 393, 84 A.L.R. 520; 37 Corpus Juris 368, sec. 18; Alabama Gold Life Ins. Co. v. Lott, 54 Ala. 499, 503.

■■■ Such values are usually set out by contract in a table attached to the policy itself. The policy here in question has a table applicable to paid up insurance. Whether policy-holders have any rights in respect to existing laws as to reserves irrespective of the contract itself is not necessary to declare at this time. Generally speaking, a legislative enactment is subject to amendment or repeal. Hard v. State ex rel. Dr. J. N. Baker, 228 Ala. 517, 154 So. 77. This could of course not have the effect of destroying contract or property rights which had become vested. Sections 22, 6, Const. of Alabama; Amendment 14 of Federal Const.U.S.C.A.Const.Amend. 14.

■■■ There is nothing here manifest whereby the Act of 1935 thus operated upon existing rights. For if there were any, they arose only under section 7061, Code, and were benefited and not reduced by the change, making them more secure, all looking to the future. In doing so, there is no such retroactive operation as to require notice of it in the title under section 45, Constitution. So much for section 45 of the Constitution.

■■■ But appellant argues that assuming the title and subject to be sufficient, the Act deprives existing policy-holders of their rights contrary to due process, and is in violation of the obligation of their con-

254

tracts. We have said enough to indicate our view that their property and contract rights are not prejudiced. But appellant would have no standing in this respect, and on this question, were it otherwise as to the reserves. If they were set up for the benefit of certain specified creditors so as to create a specific lien for them or a trust for their protection, any prejudicial change in the law relating to the trust as affecting their rights could only be attacked by them. It is said in State ex rel. Perkins v. Montgomery Light Co., 102 Ala. 594, at page 603, 15 So. 347, at page 350, that, "These contract clauses [state and federal Constitutions] are intended alone for the protection of the private rights of contracting parties. No principle or element of public state policy is intended to be conserved by them. A person, the terms of whose contract would be materially changed by the enforcement of a given legislative enactment, may conceive the change beneficial to him, and waive the unconstitutionality of the act; and in such case it would become no one— not even the state itself—to interfere and allege it. The courts will not suffer such interference. There is, in essence, no contravention of the constitution, except upon complaint of the injured party. If he accepts it, it is a valid enactment." See, also, Shehane v. Bailey, 110 Ala. 308, 20 So. 359.

Relator shows no special interest in preserving the contract rights of policy-holders, if any were thus affected, and on that ground cannot attack the Act.

We do not think there is any doubt but that the Legislature may put mutual aid, benefit and industrial insurance companies in a class (Article 5) different from those commonly called old line companies (Article 1) and also different from fraternal benefit companies (Article 8) of the insurance chapter of the Code. There are other forms of insurance whose incidents are such as to justify separate regulation. The basis for such classification cannot be declared fanciful or artificial. Equal protection is not denied. The Legislature has seen fit to make such classification. It is not for the judiciary to say that there is no sense to it.

We do not think the Act is unconstitutional on the attack here made.

Affirmed.

ANDERSON, C. J., and GARDNER and KNIGHT, JJ., concur.