J.W. Casey filed suit against Travelers Insurance Company for breach of contract and for violations of Ala. Code 1975, §5-19-1 et seq., generally known as the *Page 847 
Alabama Mini-Code; of the Federal Truth-in-Lending Act,15 U.S.C. § 1601 et seq.; and of Regulation Z, 12 C.F.R. § 226.1
et seq. Casey claimed that Travelers had breached its obligations under several loan agreements and had violated the relevant statutes when the loans were executed. He sought return of all finance charges and principal paid, statutory penalties, attorney fees, and damages in the amount of $5 million. The circuit court granted summary judgment in favor of Travelers in regard to the statutory counts. The judgment was made final pursuant to Rule 54 (b), A.R.Civ.P., and Casey filed this appeal.
Between 1974 and 1982 J.W. Casey entered into seven loan agreements with Travelers, a foreign corporation qualified to do business in Alabama. All seven loans were secured by timber property located in Butler, Crenshaw, Lowndes, Montgomery, Elmore, Coosa, and Macon Counties; in addition, one of them was also secured by Casey's farm and homestead. The amounts borrowed by Casey ranged from $125,000 to $2.3 million.
The issue on appeal is whether the circuit court properly granted summary judgment on the statutory counts, impliedly finding that the Alabama Mini-Code, the Federal Truth-in-Lending Act, and Regulation Z do not apply.
The standard of review was well stated in Williams v.Prudential Insurance Co., 470 So.2d 1200, 1201 (Ala. 1985), where the Court said, "In reviewing a summary judgment, we must determine whether there exists any genuine issue of material fact, and if not, whether the substantive law was correctly applied to undisputed facts." The relevant facts in this case are undisputed, so the only question that remains is whether the law was properly applied.
The first question to be decided by this Court is whether the trial court was correct in concluding that the licensing requirements of the Mini-Code do not apply. Section 5-19-31 (a) says:
 "None of the provisions of this chapter, except the provisions of subdivision (1) of section 5-19-1 and section 5-19-3, shall apply to any loan, forbearance or credit sale involving an interest in real property or the sale, lease or mortgage of an interest in real property, where the creditor is a lending institution which is . . . exempt from licensing under this chapter."
Section 5-19-22 (a) exempts life insurance companies from the licensing provisions of the Mini-Code, leaving them subject only to §§ 5-19-1 (1) and 5-19-3.
Although it is undisputed that Travelers is a life insurance company, Casey contends that because Travelers writes other forms of insurance as well, § 5-19-22 does not exempt it from the licensing provisions of the Mini-Code. Specifically, Casey points to casualty, health, accident, and hospitalization coverage, which Travelers also writes. He relies on the case ofEdwards v. Alabama Farm Bureau Mutual Casualty Ins. Co.,509 So.2d 232 (Ala.Civ.App. 1986), writ quashed, 509 So.2d 241
(Ala. 1987), for the proposition that casualty insurance companies must comply with the licensing aspects of the Mini-Code.
In Edwards, Farm Bureau, which is a casualty insurance company, granted installment credit to an uninsured motorist who was involved in an accident with a motorist insured by Farm Bureau. The installment note in that case was for a principal amount of $2,544, in addition to a finance charge of $1,424. The Court of Civil Appeals held that because Farm Bureau, as a casualty insurance company, was not exempt from licensing and because the loan constituted consumer credit, the loan agreement violated the licensing requirements of the Mini-Code. The loan was therefore void and the underlying obligation was unenforceable. See Derico v. Duncan, 410 So.2d 27 (Ala. 1982).
This Court finds Edwards and the line of reasoning encompassed therein inapplicable to the case at bar. Casey argues that because Travelers is both a casualty insurance company and a life insurance company, it should not be allowed exemption from licensing under Ala. Code 1975, § 5-19-22 (a). He claims that because it was not clear in which capacity Travelers *Page 848 
was acting when it made the loans, it should be estopped from denying applicability of the statute. Section 5-19-22 exempts state and federally chartered banks, trust companies, savings and loan companies, building and loan associations, credit unions, federal agencies, and life insurance companies from the Mini-Code licensing requirements. That section does not qualify the exemption or limit it to those institutions acting in a particular capacity; rather, it affords a blanket exemption for the institutions themselves. Specifically, it states, "[L]ife insurance companies . . . shall be exempt from such licensing." Ala. Code 1975, § 5-19-22 (a). The plain meaning of this section is that any company certified to sell life insurance may also make consumer loans without the necessity of additional licensing. "When the language is plain it should be considered to mean exactly what it says." Boswell v. SouthCentral Bell Tel. Co., 293 Ala. 189, 193, 301 So.2d 65 (1974). The fact that Travelers also sells casualty or health insurance does not detract from the fact that it is a life insurance company and therefore subject to exemption.
Because Travelers is exempt from licensing, only §§ 5-19-1
(1) and 5-19-3 apply to any consumer loans that it makes. The issue in this regard is whether the circuit judge correctly decided that the requirements imposed by these sections were met. Section 5-19-1 (1) defines "finance charge" under the Mini-Code, and § 5-19-3 is the rule regarding the maximum finance charge allowable on loans. Section 5-19-3 provides the following:
 "(a) The maximum finance charge for any loan or forbearance and for any credit sale, except under open-end credit plans, may equal but may not exceed. . . .
". . .
 "(3) Eight dollars per $100.00 per year for that portion of the original principal amount of the loan or original amount financed exceeding $2,000.00"
That section must be read, however, in conjunction with §5-19-31, which states that nothing in the Mini-Code shall be construed to amend or repeal, among other statutes, § 8-8-5.
Section 8-8-5 provides, in pertinent part:
 "(a) Any person or persons . . . may agree to pay such rate or rates of interest for the loan or forbearance of money and for any credit sales as such person . . . may determine, notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest; provided, that the original principal balance of the loan or forbearance of money or credit sales is not less than $2,000.00; provided further, that all laws relating to unconscionability in consumer transactions including but not limited to the provisions of chapter 19 of Title 5, known as the Mini-Code, shall apply to transactions covered by this section.
 "(b) As to any such loan or forbearance of money or credit sales made in compliance with subsection (a) of this section, neither such person [or] corporation . . . which may become liable, in whole or in part, for the payment of the debt and interest agreed to be paid thereon in accordance with the terms hereof, or any extension, amendment or renewal thereof, may raise or claim the defense or benefit of the usury laws or any other law prescribing, regulating or limiting such rate or rates of interest."
(Emphasis added.) Although § 8-8-5 initially exempted only those loans greater than $100,000, through a series of amendments the legislature reduced the amount to $2,000, thereby eliminating the finance charge limitation imposed in §5-19-3 (a)(3). See Acts 1970, Ex Sess., No. 27, p. 2628; Acts 1980, No. 80-435, p. 659; Acts 1981, No. 81-503, p. 861, § 1; Acts 1984, No. 84-108, p. 136; Acts 1984, No. 84-308, p. 683. Because the smallest loan involved in this case was $125,000, the trial court properly concluded that the provisions of the Mini-Code were not violated by the terms of the loans here. SeeFalkner v. Bank of the Southeast, 383 So.2d 177 (Ala.Civ.App. 1979), writ quashed, 383 So.2d 179 (Ala. 1980).
Casey's next contention is that exclusion of Travelers from the licensing provisions *Page 849 
of the Mini-Code is a denial of the equal protection guaranteed by the fourteenth amendment. We conclude, however, that Casey has no standing to raise this issue. As the Court said of standing in Fletcher v. Tuscaloosa Federal Savings LoanAss'n, 294 Ala. 173, 178, 314 So.2d 51, 56 (1975), "Where a particular litigant is not within the group of persons affected by the statute or portion thereof which is allegedly unconstitutional, such litigant lacks standing to raise such constitutional issue. Marcet v. Board of Plumbers Examinationand Registration of Alabama, 249 Ala. 48, 50, 29 So.2d 333
(1947); State ex rel. Highsmith v. Brown Service Funeral Co.,236 Ala. 249, 253-54, 182 So. 18 (1938)."
For the foregoing reasons, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.