55 So.2d 130

### STATE v. SMITH.

### STATE v. FLOWERWOOD NURSERY, Inc.

#### 1 Div. 444, 445.

Supreme Court of Alabama.
Oct. 25, 1951.

Rehearing Denied Nov. 23, 1951.

. Si Garrett, Atty. Gen., and H. Grady Tiller and Wm. H. Burton, Asst. Attys. Gen., for appellant.

Harry H. Smith, Mobile, for appellees.

BROWN, Justice.

The appeal is by the state in two cases from a final decree of the circuit court, in equity, sitting as a court of appeals on the appeals of Gregory L. Smith and Flowerwood Nursery, Inc., which by agreement of the parties were consolidated in the circuit court and have been submitted in this court on the record of the trial heard by the court on testimony given *ore tenus* and documentary evidence as noted by the register. The decree sustained the contentions of the appellees that the commodities as used in their respective businesses were exempt from the use tax under § 789, Title 51, Code of 1940, subsecs. (i) and (k).

The commodities here in question, the use ·of which was taxed in the proceedings be-fore the state commissioner of revenue, were and are peat moss (domestic and foreign) and cottonseed meal purchased out of the State of Alabama for use and used in combination with other materials as fertilizer ingredients; nursery tags and labels not attached to bags, boxes or barrels but to the stems of plants to indicate their variety, and sold and delivered to purchasers.

The only matter involved in the assessment against the appellee Smith is a tax on burlap and labels. The contentions made by the state in respect thereto are that the labels were not attached to the burlap used in enclosing the soil protecting the roots of the commodities sold and therefore these commodities were not exempt under the provisions of § 789, Title 51, Code of 1940, subsection (k). The state's brief concedes that these contentions are highly technical but that the rule of strict construction applicable to exemptions takes these commodities out of the scope of the exemption provisions of the statute. Subsection (k), § 789, Title 51, Code of 1940. To state this contention in the language of the brief: "It is the appellant's, State of Alabama's contention in this case that such tags or labels are not either directly or indirectly attached to the bags or containers themselves, but are attached to the plants, and are thus not within the scope of said exemption, as not being attached to said containers. The evidence in this case seems clear, or at least *tends to prove,* that in the case of these labels they are attached to the stems or to the plants themselves and not to the containers." The brief cites as supporting this contention. subsection (k), § 789, Title 51, Code of 1940, as amended, and Poer v. Curry, 243 Ala. 76, 8 So.2d 418.

The language of the statute, § 789 (k), Title 51, Code of 1940, is: "Boxes, crates, bags, bagging, ties, barrels or other containers, and the labels thereof, used in preparing agricultural products, dairy products, grove or garden products for market, including barrels and other containers and the labels thereof, used in preparing turpentine, gum spirits of turpentine and gum resin for market, when such boxes, crates, bags, bagging, ties, barrels and other containers and the labels thereof are to be sold

or furnished by the seller of the products contained therein to the purchaser of such products."

It may be noted that there is nothing in the quoted words of the statute showing how such labels shall be attached. The clear purpose and intent of the statute is that the package, barrels, box, crate or barrel must be labeled so as to show what the article or commodity is for the benefit of the purchaser, that he may know when he receives them for his use he is informed what he has purchased. The statute leaves to the seller a discretion to follow the usual practice of persons engaged in the business of propagating and selling such products the method of attaching such label. We find nothing in the decision of the court in Poer v. Curry, 243 Ala. 76, 8 So.2d 418, dealing with bottle caps or soft drink containers, applicable here.

The state's further contention is that only commercial fertilizers embodying the elements and the percentage prescribed by § 282, Tit. 2, Code of 1940, are exempt under subs. (i), Tit. 51, § 789. The basis of this contention is that Tit. 2, supra, contains the only definition of "fertilizer" found in the Code of 1940.

It is true that Chapter 16 of said title, prescribing the content and constituent elements of commercial fertilizers and regulating the registration, manufacture, tagging and sale of such fertilizers, carries a designation of the subject in the chapter entitled "Fertilizers", but does not undertake to define the word "fertilizer" nor to exclude or deal with fertilizers in general, which as a matter of common knowledge are recognized and used as plant food in agricultural and horticultural enterprises.

■ The power of the legislature to prescribe and regulate the nutritive content and percentage of the mixture for commercial fertilizer and the fees for services by the department of agriculture are referable to the police power of the state and are in no way related to the power of the state to tax for revenue though they may be combined and exercised to raise revenue.

■ The intent and purpose of the law embodied in said chapter is to protect the public and especially the agricultural public from impostures and frauds in the manufacture and sale of spurious and worthless combinations offered for sale as commercial fertilizer. If it had been the legislature's intention to limit the exemptions to commercial fertilizer, the legislature could have so stated, but to the contrary the law as written exempts from taxation "all fertilizers", excluding "cottonseed meal when not in combination with other material."

The use of cottonseed meal and peat moss are generally recognized as usable for fertilizer. Webster's International Dic. 2nd Ed. p. 604, p. 1800, Inc. Americana, defines "fertilizer" as "any substance applied to the earth for the growth of plants may be called fertilizer." Ency. Brit. Vol. 9, p. 190 states: "The words fertilizer and manure denote any substance that increases the productivity of the soil." See Vol. VI, Americana, "Fertilizer", and Vol. XII, "Peat Moss."

■ The evidence is without dispute that peat moss and cottonseed meal were purchased and shipped from out of the state for use by the taxpayer and used in combination with other materials as fertilizer,—the cottonseed meal in pure form. The taxable event under the use tax provision of the law is the use or storage for use in this state of commodities purchased at retail outside the state. Paramount-Richards Theatres, Inc., v. State, 252 Ala. 54, 39 So.2d 380.

■ The evidence presented a question of fact as to whether the commodities in question were exempt under the provisions of § 789, subds. (i), Code of 1940, and we concur in the conclusions stated in the trial court's decree.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.