188 So.2d 527

**STATE**

v.

**BANKHEAD MINING COMPANY, Inc.**

6 Div. 280.

Supreme Court of Alabama.

June 16, 1966.

Bankhead, Petree & Savage, Jasper, for appellee.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

HARWOOD, Justice.

The Bankhead Mining Company, Inc., purchased quantities of ammonium nitrate from a chemical company in Missouri. The State Department of Revenue made an assessment against Bankhead for use taxes on said ammonium nitrate totalling some $528.-23 for periods specified in the assessment. Bankhead contended that the ammonium nitrate was exempt from use taxes by virtue of being fertilizer. The Revenue Department's assessment was appealed to the Circuit Court of Walker County, in equity. That court decreed that the ammonium nitrate was fertilizer, and as such was exempt from the use taxes assessed. The assessment was set aside and annulled. This appeal is from that decree.

The evidence presented below is without any material contradictions and tends to show that Bankhead Mining Company, Inc., has its principle place of business in Walker County and is engaged exclusively in strip coal mining operations.

During the periods of time involved in the assessments, Bankhead would order ammonium nitrate "fertilizer" from a chemical company in Missouri. Often these orders were placed by telephone. The ammonium nitrate would be shipped by truck in fifty pound bags. It would be in the form of beads or prills, coated with a substance to keep them from disintegrating. The bags containing the ammonium nitrate had printed on them in bold letters in several places "Ammonium Nitrate Fertilizer." The bags also had printed on them an analysis of the fertilizer value of the contents, and a legend warning that the contents might become hazardous "when subjected to fire, blasted, or contaminated by combustible, inflammable or oxidizable materials." A certification was also printed on the bags that the contents were properly described by name and packed and marked and in proper condition for transportation in accordance with regulations of the Interstate Commerce Commission.

After receipt of the ammonium nitrate the mining company would mix it with diesel fuel oil, or lamp black. These ingredients were added for the purpose of increasing the sensitivity and explosive qualities of the ammonium nitrate. Thereafter the mixture was used as an explosive in the mining operations of the company.

By Section 788, Title 51, Code of Alabama 1940, an excise tax is imposed on the storage, use or other consumption of tangible personal property purchased at retail, regardless of whether the retailer is or is not engaged in business within this state. The tax thus imposed is commonly referred to as a use tax.

Section 789, of Title 51, provides for certain exemptions from use taxes, and reads:

"The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: * * *

"(e) All fertilizer; provided the word 'fertilizer' as used in this article shall not be construed to include cottonseed meal when not in combination with other material."

In its decree the lower court set forth the following:

"A careful reading of Title 51 Section 789 as stated above shows that 'The storage, use or other consumption in this state' of all fertilizer is exempt from the tax imposed by Article XI of Title 51. Just what the word 'or other consumption' mean is not clearly defined, nor is it possible to determine what the intent of the Legislature was when it used the words 'other consumption'; but the words 'other consumption' certainly would not limit fertilizer to the particular use of fertilizing plants or other vegetation."

We agree with this observation by the lower court, if the premise be accepted that ammonium nitrate purchased by a mining company for the purpose of blasting operations is under all circumstances to be categorized as "fertilizer."

"Fertilizer" is any substance applied to the earth for the growth of plants. Webster's Int. Dic., 2nd. Ed., p. 1800; State v. Flowerwood Nursery, Inc., 256 Ala. 426, 55 So.2d 130.

Ammonium nitrate is a chemical compound. As described in Webster's New International Dictionary, 2nd. Ed., Unabridged, it is "A colorless crystaline salt, $N. H_4 N O_3$, formed by the union of ammonia and nitric acid, and in other ways. It is an ingredient of many explosives, and is also used as a fertilizer."

Dr. Leo B. Roberts, a chemist for the State of Alabama, an expert witness offered by the State, testified that the use of

ammonium nitrate as an explosive preceded its use as a fertilizer. It is also used as a medicine, and as a chemical raw material for the production of other substances. Laughing gas results from the decomposition of ammonium nitrate, and it has many other uses.

Considered as a substance or product, it can only be said that ammonium nitrate is a chemical compound of multiple uses, and as a separate entity cannot be classified per se either as a. fertilizer, explosive, medicine, etc. As. to whether it is within a particular category for taxing purposes must of necessity have to be determined by the use made of it.

■■ Just as a paper title alone is not always determinative of ownership of property for tax purposes, (Brookley Manor, Inc. v. State, 265 Ala. 141, 90 So.2d 161), the fact that the ammonium nitrate was ordered as "fertilizer" by Bankhead Mining, and billed as "fertilizer" and delivered in bags labelled "fertilizer" cannot be deemed determinative of the character of ammonium nitrate, but its true category must be determined by the substance and reality of the factual background presented.

This court has held that the use to which a product is put can determine that it is exempt from taxation. In State v. Newbury Mgf. Co., Inc., 265 Ala. 600, 93 So.2d 400, the principle was recognized that sand and steel shot were not exempt per se under Section 789(p), Title 51, Code of Alabama 1940, but were exempt when used as parts of a machine or machinery used in manufacturing. "Their status is not controlled by the material of which they are composed, *but by the office they serve in the process.*" (Italics ours.)

Again in State v. Rockwood Alabama Stone Co., 257 Ala. 220, 58 So.2d 449, it was held that crushed limestone was within the fertilizer exemption of Section 755(g), Title 51, Code of Alabama 1940, (the predecessor of what is now Section 786(34) (b), Title 51, pocket part, Code of Alabama 1940). The basis of this holding was

that the crushed limestone involved had "no possible use other than as an aid to the production of crops," and that "there is no market for it except for such use."

In the more exacting field of criminal law the question of whether an object used in inflicting injury on another is a deadly weapon, is determined by the manner of its use, and the actual effects produced by its use. Williams v. State, 251 Ala. 397, 39 So.2d 37.

■ If the use made of a product is considered in determining that it is exempt from taxation, it follows as a corollary that such use should properly be considered in determining that it is not within an exemption.

■■ It must also be remembered that we are here dealing with an exemption to a taxing statute. It is well settled by numerous of our cases that taxation is the rule; exemption the exception. When it is claimed that property is relieved of taxation by an exemption provision the intention of the legislature to release such property from its just proportion of public burden must be expressed in clear and unambiguous terms, and such release should not be deduced from language of doubtful import, nor where there is room for reasonable controversy as to legislative intent. See 18 Ala.Dig., Taxation, ☞204(2), for innumerable authorities.

■ The language pertaining to the exemption now being considered (Sec. 789(e), supra) that is, "all fertilizer" when read in light of the several other exemptions relating to agricultural endeavors, granted in the same section, creates a reasonable inference that the intent of the legislature was to exempt fertilizer from the use tax as an encouragement to agricultural or farming operations, and not for the benefit of mining operations. Certainly, the exemption from use taxes of "all fertilizer" creates a reasonable controversy as to legislative intent, if it be argued that such exemption was legislatively intended *to apply to a substance not*

inherently a fertilizer, particularly when such substance is solely used other than as fertilizer.

One seeking to assert an exemption from taxation has the burden to clearly establish such right, and in all cases of doubt as to legislative intent, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107.

The legal doctrines above alluded to, when applied to the factual situation disclosed by the evidence of this case, lead us to the conclusion that the lower court erred in decreeing that the ammonium nitrate purchased by Bankhead Mining Company was exempt from use taxes by virtue of the exemption of fertilizer from such levies. We hold that such ammonium nitrate, by virtue of the use made thereof, was not fertilizer within the contemplation of the exemption provisions, and that the use taxes assessed thereon are due to be paid. The decree appealed from is due to be reversed.

Reversed and rendered.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.