This is an appeal from an order of the Montgomery County Circuit Court upholding assessments for use tax imposed by the City of Albertville.
Assessments for the period January 1, 1972 through May 31, 1974 were levied against appellants on September 25, 1974. Taxpayers requested an administrative hearing. After hearing, the Department denied taxpayers' request for redetermination and upheld the assessment. Taxpayers paid the assessments under protest. Appeal to the Circuit Court of Montgomery County was taken June 17, 1975. In the circuit court the cases were consolidated and submitted to the court on the pleadings, stipulation, and briefs. The court affirmed and upheld the assessments. Appeal to this court followed.
Taxpayers operated a wholesale poultry business located within the city of Albertville. In operating this business taxpayers purchased substantial quantities of goods outside of Albertville. Such purchases were made from sources in other cities and counties within the state and from out-of-state sources. According to the stipulation, no sales tax is normally paid on out-of-state purchases and taxpayers pay the state use tax on such purchases. Generally, local sales tax, where applicable, is paid on purchases made within the state. Such sales taxes are of two types. One is a "gross receipts" tax which may be, but is not required to be, passed on to the ultimate consumer. The other type is a true sales tax which must be added to the purchase price and passed on to the consumer.
The Albertville sales and use tax was first effective November 1, 1970. Under Title 37, Section 771 (3), municipalities are granted authority to enact such taxes so long as they "parallel" the corresponding state sales and use tax. During the 1973 regular session the legislature amended Title 51, Section 811 (3). This amendment, effective October 1, 1973, modified the use tax as regards certain farm machinery and equipment. The record does not show that any such devices were covered by the assessment here. In order to make its use tax conform to the state tax, the City of Albertville enacted amendments on January 21, 1974. The ordinance recited that it was retroactive to October 1, 1973; however, it was not published in a newspaper of general circulation until June 4, 1974.
Under Title 37, Section 759 (1) the Department is required to collect certain local sales and use taxes when so requested by the city or town. When the instant case was heard the Department collected 189 sales taxes and 79 use taxes for various counties, cities and towns in the state. According to the stipulation the Department employs 100 agents who conduct sales and use tax audits on businesses subject to the tax. Many businesses have never been audited. With the present staff, it would take approximately 30 years to audit all the businesses subject to the tax. The Department does not enforce the use tax *Page 385 
against any individuals throughout the state except with regard to property for which some form of license is required, such as motor vehicles, boats and airplanes.
Taxpayers present three basic arguments on appeal, the first being that selective enforcement of the use tax is a denial of equal protection and due process of law. It is well established that a statute or ordinance which is fair on its face can still be constitutionally objectionable when applied in an unjust and discriminatory manner. Yick Wo v. Hopkins, 118 U.S. 356,6 S.Ct. 1064, 30 L.Ed. 220. Taxpayers contend that the use tax here challenged, although it purports to apply equally to all persons bringing property into the city for use therein, is in reality applied to only a few. However, we do not perceive the manner of enforcement as outlined in the stipulation to be arbitrary or unjust. Indeed, it demonstrates a rational and sensible method to collect the tax.
It is common knowledge that even the federal government does not audit every taxpayer to insure that the proper amount of taxes have been paid. Instead, selective audits are conducted with the knowledge that most taxpayers will comply with the tax laws rather than face possible civil and criminal penalties for violation. In this way the cost of collection is kept as low as possible while maintaining revenue levels. Although the number of auditors employed may not be sufficient to audit various taxpayers as often as the Department might prefer, we cannot see an arbitrary or unjust plan to discriminate against some taxpayers while purposely failing to require others to pay. Indeed, failure to determine if others have failed to pay tax due is no defense to collection of tax found due from taxpayer.Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183; 71 Am.Jur.2d, State and Local Taxation § 152.
Taxpayers also seem to feel that the fact that no attempt is made to collect use tax from individuals on property which does not require a license shows discrimination. In brief taxpayers argue:
 "Has the Mayor of Albertville, or any member of the City Council ever paid the use tax on shoes bought in Guntersville, a suit bought in Birmingham, or a washing machine bought in Huntsville? Certainly not! Yet the Department's auditors, going over the taxpayer's records with a finetooth comb, identified and assessed the use tax on many purchases which cost less than a washing machine, less than a new suit, and indeed, less than a pair of shoes."
The obvious answer to this argument lies in the records available for audit by the Department. Business enterprises normally keep detailed records of purchases for income tax and accounting purposes. Rarely would an individual keep such a record of purchases. Only by fielding an army of inspectors, inquiring into the origin of people's shoes, suits, washing machines, food or other personal property could the State enforce the use tax as regards individuals. By limiting its attempts to enforce the use tax to personal property of individuals requiring licenses, the Department enforces the tax in the only rational and reasonable way possible.
Taxpayers' second main argument is that Albertville's use tax ordinance does not "parallel" the State use tax as required by Title 37, Section 771 (3), Code. Title 51, Section 789 (3) provides:
 "Credit for sales or use tax paid to another state. — If a sales or use tax equal to or greater than the amount of the Alabama tax is paid to another state under a requirement of law, the property which is the subject of such tax, when imported for use or consumption in Alabama is not subject to the use tax, which is required to be paid by section 788, Title 51, Code of Alabama 1940, as amended. If the amount of tax paid to the other state is less than the Alabama tax, then the difference between the *Page 386 
out-of-state tax and the Alabama tax must be paid. No credit will be allowed for taxes paid on tangible personal property in any state which does not give credit for taxes paid on similar property in Alabama. The commissioner of revenue shall require such proof of payment of tax to another state as he deems to be necessary and proper."
Taxpayers argue that, since the state use tax allows a credit for sales or use tax paid to another state, a city use tax should allow a credit for sales or use tax paid to other counties or cities in order to be "parallel."
It would seem that the intent of Section 789 (3) is to avoid taxing a second time property which has already been subject to tax in another state. Taxpayers would argue that this intent should be carried over to city use taxes so that if, for example, goods purchased in Birmingham were subject to a 2% sales tax, they would not be subject to a 2% use tax when brought into the City of Albertville. Indeed, the Department seems to feel that such an intent should prevail. According to the stipulation, the Department has adopted a practice of allowing a credit for a "true" sales tax paid to another city or county, provided the Department administers that tax. However, no credit is allowed for a "gross receipts" tax paid to another city or county, or for a "true" sales tax paid where the Department does not administer that tax.
Section 789 (3) does provide a credit for sales and use tax paid to another state. However, it does not expressly provide a credit for sales and use tax paid to a city or county in another state. For example, suppose taxpayers had purchased equipment in Jackson, Mississippi, and paid a state sales tax of 3% and city sales tax of 2%. Under Section 789 (3) taxpayers would only be entitled to a 3% credit against the 4% Alabama use tax. This is so even though a total tax of 5% was paid in Mississippi. Yet taxpayers here contend that the legislature intended a credit for city sales or use tax paid on purchases made within Alabama when it did not allow a similar credit for purchases made out of the state.
In State v. Bankhead Mining Company, 279 Ala. 566,188 So.2d 527, the Supreme Court said:
 "It must also be remembered that we are here dealing with an exemption to a taxing statute. It is well settled by numerous of our cases that taxation is the rule; exemption the exception. When it is claimed that property is relieved of taxation by an exemption provision the intention of the legislature to release such property from its just proportion of public burden must be expressed in clear and unambiguous terms, and such release should not be deduced from language of doubtful import, nor where there is room for reasonable controversy as to legislative intent. See 18 Ala.Dig., Taxation, 204 (2), for innumerable authorities."
Section 789 (3) does not expressly require a credit as urged by taxpayers. Therefore the use tax in question is not void for failure to include such a credit.
Taxpayers' third main contention concerns amendments to the state use tax enacted by the 1973 legislature. One of these amendments, effective October 1, 1973, made changes in the use tax imposed on agricultural machinery and equipment. The record does not disclose that any such devices were part of the assessment against taxpayers.
On January 21, 1974, the City Council of Albertville enacted an ordinance amending the Albertville use tax to conform to the state statute as amended. The ordinance recited that it was effective October 1, 1973, but was not published as required by law until June 4, 1974. Taxpayers assert that the ordinance was not effective until June 4, 1974, and, therefore, the city use tax was not parallel to the state tax during part of the period in question. *Page 387 
As previously stated, the record does not reflect that any property affected by the amendment was taxed as part of the audit. Taxpayers state in brief that, for purposes of this case, the nature of the amendments are not relevant.
Under these circumstances we find that taxpayers lack standing to raise the issue of failure to amend the ordinance to conform to the state amendment. State v. Brown ServiceFuneral Co., 236 Ala. 249, 182 So. 18. The provision of the ordinance under which taxpayers were taxed was in every respect parallel to the state use tax statute. Only if use tax had been assessed on some form of agricultural machinery and equipment that was in some way affected by the 1973 amendment would taxpayers have standing to attack this particular portion of the ordinance. Wallace v. Brewer, 315 F. Supp. 431 (M.D.Ala. 1970).
The final judgment of the court below being correct, this case is due to be affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.