LEO D. MACH AND BETSY CLARK, APPELLANTS, V.
COUNTY OF DOUGLAS, STATE OF NEBRASKA, AND
JULIE M. HANEY, AS TREASURER OF
DOUGLAS COUNTY, NEBRASKA, APPELLEES.
612 N.W.2d 237

Filed June 23, 2000.   No. S-99-266.

Monte Taylor, of Taylor, Kluver, Peters & Drews, for appellants.

James S. Jansen, Douglas County Attorney, and Timothy J. Buckley for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Appellants, Leo D. Mach and Betsy Clark, sued the County of Douglas and the Douglas County treasurer (collectively the

County) alleging that the County's system for enforcement and collection of inheritance tax violates the constitutional rights of those who are compelled to pay the tax. The action was initially filed in the county court, but was later transferred to the district court. The district court entered summary judgment against appellants, and they appeal.

## FACTUAL BACKGROUND

The following facts are alleged in appellants' petition: Mach succeeded to the ownership of real and personal property to which he was a joint tenant with right of survivorship. Independent proceedings to determine inheritance tax pursuant to Neb. Rev. Stat. §§ 77-2001 and 77-2002 (Reissue 1996) were commenced in the Douglas County Court, and the court assessed a tax in the amount of $547.56. Mach paid the tax to the Douglas County treasurer in order to remove a lien imposed on the real estate pursuant to Neb. Rev. Stat. § 77-2003 (Reissue 1996).

Clark was bequeathed a sum of cash under the terms of a friend's will. Probate proceedings were commenced in the county court, and as a part of those proceedings, the court assessed tax against Clark in the amount of $270. That sum was paid to the Douglas County treasurer.

Appellants allege, generally, that the County collects inheritance tax only from persons who succeed to real property through joint tenancy or to personal property through probate proceedings. Appellants further allege, generally, that inheritance tax is not collected from heirs who succeed to personal property through nonprobate proceedings unless those persons voluntarily come forward to pay the tax. Appellants allege that these circumstances create "a de facto policy of selective enforcement" that systemically discriminates against appellants and others similarly situated and that there is no justifiable distinction between those required to pay tax and those who are not. Appellants did not allege that they were discriminated against because of race, gender, or other suspect classification.

Appellants claim entitlement to relief pursuant to 42 U.S.C. § 1983 (Supp. III 1997) and Neb. Rev. Stat. § 77-2018 (Reissue 1996). In their § 1983 cause of action, appellants claim that the

County's inheritance tax collection policies violate appellants' rights under the Equal Protection Clause of the U.S. Constitution. In their § 77-2018 cause of action, appellants claim that they are entitled to an erroneous payment refund; they argue that their payment was erroneous because it was collected in violation of the Equal Protection Clause of the U.S. Constitution and Neb. Const. art. I, § 25.

Appellants moved to certify their action as a class action, which motion was granted by the county court. Class action certification is not at issue in this appeal. We do not comment on the propriety of the class action certification.

The County moved for summary judgment, arguing, inter alia, that the petition failed to state a cause of action. The County did not adduce evidence in support of its motion. Appellants introduced 15 exhibits, most of which consisted of various pleadings, and the remainder of which tended to substantiate the factual allegations made in appellants' petition regarding the County's procedures for collecting inheritance tax. The district court entered summary judgment against appellants, stating:

> I am going to find that in viewing the evidence in the light most favorable to the plaintiff, that there is no genuine issue of material fact under either the first claim or the second claim of the petition. That as to the 1983 action, that there is no evidence that the County has deliberately attempted to deprive anybody of any right, privilege, or principle of our immunities secured by the Constitution, and the cause of action fails.
>
> And as to the collection of the inheritance tax claim on the erroneous request for a refund on the erroneously collected tax, that there's no evidence that shows that the tax was not calculated and collected pursuant to statute. So I'm going to sustain the motion for summary judgment.

## ASSIGNMENTS OF ERROR

Appellants assign, consolidated and restated, that the district court erred in determining that appellants' petition does not state a cause of action and in granting the County's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Durkan v. Vaughan, ante* p. 288, 609 N.W.2d 358 (2000); *Callahan v. Washington Nat. Ins. Co., ante* p. 145, 608 N.W.2d 592 (2000).

■ When it has been asserted in a summary judgment motion that an opposing party has failed to state a cause of action, as far as that issue is concerned, the motion may be treated as one in fact for a judgment on the pleadings, notwithstanding its designation as something else. *Rodriguez v. Nielsen, ante* p. 264, 609 N.W.2d 368 (2000); *Becker v. Hobbs*, 256 Neb. 432, 590 N.W.2d 360 (1999). A motion for judgment on the pleadings admits the truth of all well-pleaded facts in the opposing party's pleadings, together with all reasonable inferences to be drawn therefrom, and the moving party admits, for the purpose of the motion, the untruth of the movant's allegations insofar as they have been controverted. *Becker v. Hobbs, supra.*

## ANALYSIS

### § 1983 CLAIM

■ Only two factual allegations are necessary to state a cause of action under § 1983: (1) a defendant's deprivation of a plaintiff's right secured by the Constitution and laws of the United States and (2) that the deprivation occurred under color of law. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999); *Wichman v. Naylor*, 241 Neb. 249, 487 N.W.2d 291 (1992). See, also, *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998), *cert. denied* 528 U.S. 814, 120 S. Ct. 50, 145 L. Ed. 2d 44 (1999). Thus, in order to determine whether appellants stated a cause of action under § 1983, our inquiry first turns to whether their petition alleges a deprivation of a federal constitutional right; specifically, whether appellants have alleged a violation of the Equal Protection Clause.

Appellants do not make any claim pursuant to the equal protection clause of the Nebraska Constitution, adopted in the 1998

amendment to Neb. Const. art. I, § 3. Moreover, the events alleged in appellants' petition occurred prior to that amendment. See *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000). Thus, this case does not involve Neb. Const. art. I, § 3.

■ A finding of unlawful selective enforcement must be based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *State v. Long*, 206 Neb. 446, 293 N.W.2d 391 (1980). A discriminatory purpose will not be presumed; there must be a showing of clear and intentional discrimination. *Id.*

In *Oyler v. Boles*, 368 U.S. 448, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962), the petitioner claimed that West Virginia had prosecuted him under a habitual criminal statute while failing to prosecute others with similar offenses. The U.S. Supreme Court determined that

> the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.

368 U.S. at 456.

In *Wayte v. United States*, 470 U.S. 598, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985), the petitioner was required by federal law to register with the Selective Service System, but failed to do so. Instead, the petitioner wrote letters to governmental officials, including the President of the United States, stating that he had not registered and did not intend to do so. *Id.* Selective Service had adopted a policy of "passive enforcement" under which it did not investigate and prosecute nonregistration cases unless the young men who failed to register informed the government that they refused to register or were reported by others. 470 U.S. at 601. When the petitioner was prosecuted for failing to register, he raised a defense of selective enforcement, alleging that he had been prosecuted for his political activities. *Id.* The district court dismissed the indictment on that ground, but the U.S. Court of Appeals for the Ninth Circuit reversed the dismissal.

The U.S. Supreme Court affirmed the decision of the Court of Appeals, stating:

In our criminal justice system, the Government retains "broad discretion" as to whom to prosecute. . . . "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." . . . This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

As we have noted in a slightly different context, however, although prosecutorial discretion is broad, it is not " 'unfettered.' Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints." . . . In particular, the decision to prosecute may not be " 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' " . . . including the exercise of protected statutory and constitutional rights. . . .

It is appropriate to judge selective prosecution claims according to ordinary equal protection standards. . . . Under our prior cases, these standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. . . .

> " '. . . Discriminatory purpose' . . . implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . In the present case, petitioner has not shown that the Government prosecuted him *because* of his protest activities. Absent such a showing, his claim of selective prosecution fails.

(Citations omitted.) *Wayte v. United States*, 470 U.S. 598, 607-610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985). Accord, *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999); *United States v. Armstrong*, 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996).

Several courts in other jurisdictions have applied these federal equal protection standards specifically in the context of tax collection and enforcement. See, e.g., *Argabright v. U.S.*, 35 F.3d 472 (9th Cir. 1994); *Matter of F. W. Koenecke & Sons, Inc.*, 533 F.2d 1020 (7th Cir. 1976), *cert. denied* 429 U.S. 1038, 97 S. Ct. 734, 50 L. Ed. 2d 749 (1977); *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 665 N.E.2d 795, 216 Ill. Dec. 537 (1996), *cert. denied* 519 U.S. 866, 117 S. Ct. 175, 136 L. Ed. 2d 116; *N.Y. Dept. of Tax. & Fin. v. Bramhall*, 235 A.D.2d 75, 667 N.Y.S.2d 141 (1997); *Tucson Mech. Contr. v. Dept. of Revenue*, 175 Ariz. 176, 854 P.2d 1162 (Ariz. App. 1992); *Lang v. City of Philadelphia*, 31 Pa. Commw. 537, 377 A.2d 849 (1977); *McElrath Poultry Co., Inc. v. State, Dept. of Revenue*, 332 So. 2d 383 (Ala. App. 1976); *Radiofone Corp. of New Jersey v. Director, Div. of Taxation*, 4 N.J. Tax 420 (1982).

In *Argabright v. U.S., supra,* the Ninth Circuit specifically considered whether the plaintiffs' complaint, seeking judicial review of an Internal Revenue Service decision to deny refund of penalty interest, stated a constitutional claim. The court stated:

> [T]he complaint makes no allegation that the IRS intentionally discriminated against [plaintiffs] or acted on the basis of an improper or arbitrary classification, a necessary predicate of an equal protection or due process claim. *Cf., Oyler v. Boles*, 368 U.S. 448, 457, 82 S.Ct. 501, 506, 7

L.Ed.2d 446 (1962) (noting that "the exercise of some selectivity in enforcement is not in itself a federal constitutional violation" and holding that where petitioner did not state that "the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification[,] . . . grounds supporting a finding of a denial of equal protection were not alleged").

Accordingly, we conclude that, even when the allegations in the amended complaint are construed broadly, and interpreted in the light most favorable to the appellants, the amended complaint does not state a constitutional claim.
*Argabright v. U.S.*, 35 F.3d at 477.

The failure to consistently enforce an ordinance does not destroy it. Abuse in its enforcement does not affect its validity. *City of Omaha v. Lewis & Smith Drug Co., Inc.*, 156 Neb. 650, 57 N.W.2d 269 (1953); *Arrigo v. City of Lincoln*, 154 Neb. 537, 48 N.W.2d 643 (1951).

In *Brown's Furniture, Inc. v. Wagner, supra*, the plaintiff, a Missouri retailer, sought an injunction against the State of Illinois Department of Revenue regarding the retailer's obligation to collect use tax on sales to Missouri residents. The plaintiff alleged, inter alia, that other similarly situated Missouri retailers were not required to collect Illinois use tax. *Id.* The Supreme Court of Illinois rejected this claim, stating:

It has long been established that the guarantee of equal protection applies not only to facial legislative classifications, but also to the administration of laws as well. . . . Thus, it has been held that principles of equal protection are violated when the selective enforcement of a statute is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." . . . However, so long as a statute is rationally based, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." . . .

[The plaintiff] offers no evidence to suggest that it was targeted by the Department for an invidious reason, such as race, religion, or political beliefs. . . . The Department's legitimate objective of collecting revenue, coupled with its finite resources, necessarily requires it to exercise

some discretion in selecting which tax collector to audit. The exercise of that discretion in the case at bar was neither discriminatory nor arbitrary. Therefore, we conclude that [the plaintiff's] equal protection claim is without merit.

(Citations omitted.) *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 430-31, 665 N.E.2d 795, 805-06, 216 Ill. Dec. 537, 547-48 (1996).

In *Lang v. City of Philadelphia*, 31 Pa. Commw. 537, 377 A.2d 849 (1977), the appellant, a resident of the State of New Jersey, appealed from the taxation of income earned while working at a naval shipyard in Pennsylvania. The appellate court rejected appellant's equal protection claim, citing *Oyler v. Boles, supra*, and stating that "[a]ppellant's complaint only makes the bare assertion that there is unlawful selective enforcement of the tax by the taxing authority. Such a statement, without more, is insufficient to state a proper cause of action." *Lang v. City of Philadelphia*, 31 Pa. Commw. at 541, 377 A.2d at 851.

A factual situation similar to that of the instant case was presented in *McElrath Poultry Co., Inc. v. State, Dept. of Revenue*, 332 So. 2d 383 (Ala. App. 1976). In that case, the Alabama state use tax, by its terms, applied equally to all property brought into the state. *Id.* In effect, however, the Department of Revenue did not enforce the tax except on personal property requiring a license, such as motor vehicles, boats, or airplanes. *Id.* The taxpayers in that case claimed that this method of enforcement violated their equal protection rights. *Id.* The appellate court rejected this argument, stating that

we do not perceive the manner of enforcement as outlined in the stipulation to be arbitrary or unjust. Indeed, it demonstrates a rational and sensible method to collect the tax.

. . . .

. . . Only by fielding an army of inspectors, inquiring into the origin of people's shoes, suits, washing machines, food or other personal property could the State enforce the use tax as regards individuals. By limiting its attempts to enforce the use tax to personal property of individuals

requiring licenses, the Department enforces the tax in the only rational and reasonable way possible.
*Id.* at 385.

Appellants rely upon a separate line of cases from the U.S. Supreme Court, which have generally established that an equal protection claim can be stated when similar properties are not assessed with equal valuation for purposes of taxation. See, e.g., *Cumberland Coal Co. v. Board*, 284 U.S. 23, 52 S. Ct. 48, 76 L. Ed. 146 (1931); *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923). Those cases are distinguishable, however, in that they apply to the valuation of real property. In that limited context, the taxing authority has no discretion to treat similarly situated property owners differently. In the instant case, however, as in a criminal prosecution, it is necessary to preserve the discretion of the relevant agent of enforcement regarding the investigation and prosecution of claims.

Appellants also rely on *Knoefler Honey Farms v. County of Sherman*, 196 Neb. 435, 243 N.W.2d 760 (1976). That case, however, was resolved on a question of statutory interpretation. This court concluded by determining that the tax statute in question was not intended by the Legislature to apply to the type of personal property at issue in that case. Thus, the equal protection discussion contained in the opinion was unnecessary to resolution of the appeal and was dicta. A case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court. *Brown v. Kindred, ante* p. 95, 608 N.W.2d 577 (2000); *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999).

The U.S. Supreme Court has made it clear that an equal protection claim in the context of selective enforcement must allege discrimination based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Appellants have failed to plead facts sufficient to state a claim for an Equal Protection Clause violation. Absent a violation of the Equal Protection Clause, appellants have failed to state a claim for relief under § 1983.

While we agree with appellants' contention that certain property is not being taxed, this is not a matter for this court, but for the Legislature.

## § 77-2018 CLAIM

Appellants also claim relief under § 77-2018, which provides that when inheritance tax has been erroneously paid to the county treasurer, the court may order a refund of the erroneously paid tax. This statute is the exclusive means by which erroneously paid inheritance tax may be recovered under state law. See *In re Estate of Woolsey*, 113 Neb. 218, 202 N.W. 630 (1925). This theory of recovery, however, is simply another vehicle for appellants to advance their equal protection argument, as the claimed violation of equal protection is the sole reason that appellants claim the payment of the tax was in error.

Under this theory of recovery, appellants claim rights pursuant to Neb. Const. art. I, § 25. That section provides that "[t]here shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property. The right of aliens in respect to the acquisition, enjoyment and descent of property may be regulated by law."

This court, however, has not held this section of the constitution to be any more demanding than the Equal Protection Clause of the U.S. Constitution. See, e.g., *Bachus v. Swanson*, 179 Neb. 1, 136 N.W.2d 189 (1965); *City of Ord v. Biemond*, 175 Neb. 333, 122 N.W.2d 6 (1963); *Creigh v. Larsen*, 171 Neb. 317, 106 N.W.2d 187 (1960); *Panebianco v. City of Omaha*, 151 Neb. 463, 37 N.W.2d 731 (1949); *Richter v. City of Lincoln*, 136 Neb. 289, 285 N.W. 593 (1939). The Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges. *DeCoste v. City of Wahoo*, 255 Neb. 266, 583 N.W.2d 595 (1998); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995).

Appellants' claim under § 77-2018 is entirely dependent on the supposed violation of their rights to equal protection under the state and federal Constitutions. As appellants have failed to allege a cause of action for violation of equal protection, their claim under § 77-2018 must fail as well.

When a party challenges the sufficiency of a petition to state a cause of action, a motion for judgment on the pleadings should be sustained only when an amendment cannot cure the defect. *Ohio Nat. Life Ins. Co. v. Rust*, 255 Neb. 372, 585

N.W.2d 438 (1998); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). Appellants conceded at oral argument that they had completed discovery in this case and that there were no facts they could allege that would support a claim of invidious discrimination. Consequently, no amendment of their petition could cure the defect in their equal protection claim, and this court need not remand the cause in order to grant appellants leave to replead. See *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000).

## CONCLUSION

Appellants failed to state a cause of action relating to a violation of their equal protection rights and conceded that no amendment of their petition would allow them to state such a cause of action. Consequently, the judgment of the district court was without error and is affirmed.

AFFIRMED.