PITTMAN, Judge.
Siemag, Inc. (“Siemag”), and Sandvik Mining and Construction USA, LLC (“Sandvik”), each seek a writ of mandamus compelling the Walker Circuit Court to vacate an order denying their motions to transfer to the Tuscaloosa Circuit Court a civil action brought in May 2007 by Prince U. Hagler, Jr., and his wife, who are both Walker County residents, against Siemag, Sandvik, and a number of other named and fictitiously named defendants stemming from a workplace injury to Hagler resulting in the amputation of both of his arms, which injury allegedly arose out of and in the scope of his employment with Jim Walter Resources, Inc. (“Jim Walter”). For the reasons specified herein, we deny both petitions.
The plaintiffs’ complaint asserted a claim against Jim Walter under the Alabama Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq., as well as tort claims against individual and corporate third parties who were allegedly also responsible for Hagler’s injuries. Hagler and his wife alleged in the complaint that venue was proper in Walker County because, among other things, (a) two individual defendants who were co-employees of Hagler, Ken Russell and David Hicks, were Walker 'County residents; and (b) the plaintiffs resided in Walker County and all the corporate defendants did business by agent in Walker County. Jim Walter filed a motion to sever the workers’ compensation claim from the action and filed a motion to dismiss or, in the alternative, to transfer the action to the Tuscaloosa Circuit Court, asserting that the plaintiffs’ claims arose in Tuscaloosa County and that Jim Walter did no business by agent in Walker County. Other corporate defendants, including Siemag and Sandvik, thereafter filed motions to transfer the action to the Tuscaloosa Circuit Court on the grounds that Walker County was either an improper or an inconvenient forum. The plaintiffs filed a unified response to the motions to sever, dismiss, and transfer, contending that the action should proceed in the Walker Circuit Court.
*977 On July 31, 2009, the Walker Circuit Court entered an order in which that court concluded that Walker County was a proper venue under Ala.Code 1975, §§ 6-3-2 and 6-3-7, and that a transfer of the action to the Tuscaloosa Circuit Court was not warranted on the basis of the convenience of parties and witnesses or in the interest of justice.[1] On September 11, 2009, 42 days after the entry of the Walker Circuit Court’s order (ie., within the presumptively reasonable time for seeking an extraordinary writ as set forth in Rule 21(a)(3), Ala. R.App. P.), Siemag filed a petition for a writ of mandamus in the Alabama Supreme Court challenging the correctness of the trial court’s order solely as it relates to the doctrine of forum non conveniens; the Alabama Supreme Court transferred Siemag’s petition to this court, where it was assigned case no. 2090016. On October 28, 2009, this court called for answers and briefs from Siemag and the respondents, which have been filed.
On November 2, 2009, 94 days after the entry of the Walker Circuit Court’s order (ie., well outside the presumptively reasonable time for seeking an extraordinary writ as set forth in Rule 21(a)(3), Ala. R.App. P.), Sandvik filed a mandamus petition in this court; after that petition was assigned case no. 2090134, this court, acting ex mero motu, consolidated that case with case no. 2090016. However, upon further review of the reasons offered by Sandvik for filing its petition outside the presumptively reasonable time (principally that it did not receive notice that Siemag had filed its mandamus petition until after the presumptively reasonable time for seeking review of the July 31, 2009, order had expired) does not state a sound basis for Sandvik’s having delayed in seeking mandamus review on its own behalf. Unlike Rule 4, Ala. R.App. P., which allows a party to take a cross-appeal from a final judgment or an appealable interlocutory order within 14 days after any other’s party’s timely filed notice of appeal, there is no mechanism in Rule 21 that would allow a respondent to file a “cross-petition” after the expiration of the presumptively reasonable time for seeking review by a petition for an extraordinary writ. For that reason, Sandvik’s petition in case no. 2090134 is denied as having been untimely filed.[2] We thus proceed to consider the merits of Siemag’s petition.
“A petition for the writ of mandamus is the proper method by which to seek review of a denial of a motion for a change of venue. Ex parte Alabama Great Southern R.R., 788 So.2d 886 (Ala. 2000). ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995) [An appellate court] reviews a petition for a writ of mandamus challenging a ruling on venue under an abuse-of-discretion standard. Id.
“ ‘The burden of proving improper venue is on the party raising the issue and on review of an order transferring *978 or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.’ ”
“Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987).”
Ex parte Scott Bridge Co., 834 So.2d 79, 80-81 (Ala.2002); accord Ex parte Cavalier Home Builders, L.L.C., 920 So.2d 1105, 1108 (Ala.Civ.App.2005). We further note that Ex parte Yocum, 963 So.2d 600 (Ala.2007), which also involved a challenge to a trial court’s denial of a motion to transfer a civil action to a forum that was purportedly more convenient, notes that: (a) “[t]he trial court should give deference to the plaintiffs choice of a proper forum”; and (b) the “ ‘burden is on the party moving for the transfer to prove that the transferee forum is significantly more convenient than the plaintiffs chosen forum.’” 963 So.2d at 602 (quoting Ex parte Nichols, 757 So.2d 374, 378 (Ala.1999)).
In its petition and briefs, Siemag posits that the convenience of parties and witnesses would be served by a transfer of the case from Walker County to Tuscaloosa County, citing the location of the mine where Hagler’s injury occurred and the relative remoteness of Walker County to air-transportation centers in Tuscaloosa and Birmingham. However, as Hagler and his wife point out in their brief, the prospect that any defendant’s witnesses or corporate representatives having knowledge of facts pertinent to the plaintiffs’ claims will be required to travel to Alabama by air is entirely speculative given the silence of the evidentiary record concerning the locations of those witnesses. Further, to the extent that any nonparty employees of the corporate defendants will be required to attend trial and to testify, any inconvenience to them “does not weigh heavily where ... their presence at trial can be secured by those defendants.” Ex parte Yocum, 963 So.2d at 602. Finally, we note that the plaintiffs filed several affidavits bearing on the convenience issue, including (a) Hagler’s own affidavit, in which he testified that because of the loss of his arms he will require automotive transportation by family members from his home in Sumiton and that travel to Tuscaloosa, a distance of 75 miles, will present a greater hardship than travel to Jasper, a distance of 15 miles; and (b) the affidavit of Victor Argo, a Jefferson County resident and an eyewitness to Hagler’s injury who testified that two individual defendants reside in Walker County and that it would be more convenient for him to attend a deposition and a trial in Walker County. Because the burden of demonstrating that Tuscaloosa County is significantly more convenient than the plaintiffs’ chosen forum of Walker County rests upon the shoulders of Siemag, see Yocum 963 So.2d at 602, and because Siemag has not carried that burden, we reject the contention that the convenience of parties or witnesses compels a transfer here.
We next turn to the “interest of justice” prong of § 6-3-21.1, Ala. Code 1975, which Siemag also invokes. Analysis of that prong requires consideration of “ ‘whether the “nexus” or “connection” between the plaintiffs action and the original forum is strong enough to warrant burdening the plaintiffs forum with the action.’ ” Ex parte Price, 47 So.3d 1221, 1225 (Ala.2010) (quoting Ex parte First Tennessee Bank Nat’l Ass’n, 994 So.2d 906, 911 (Ala.2008)). Stated another way, if a plaintiffs action has little, if any, connection to the chosen forum, it should be transferred in the interests of justice. See, e.g., Ex parte Verbena United Methodist Church, 953 So.2d 395, 400-01 (Ala.2006) (trial court acted outside its discretion in refusing to transfer action alleging defamation, invasion-of-privacy, and tort-of-outrage claims *979 when only one of three defendants was domiciled in forum county, that defendant had received only one letter from the plaintiff demanding an investigation, and that defendant had agreed to the proposed transfer).
In this case, Hagler sustained injuries while working for Jim Walter in its # 4 mine, which is located near Brook-wood, a community in Tuscaloosa County; after the incident made the basis of the plaintiffs’ claims, representatives from the United States Mine Safety and Health Administration’s office in Birmingham traveled to the mine and conducted an investigation, resulting in the issuance of several administrative citations pertaining to the actions and omissions of Jim Walter and its employees at the # 4 mine during the pei’iod before Hagler’s injury. Citing those factors, Tuscaloosa County’s extensive mining activity, and Tuscaloosa County’s larger judge allocation and juror pools, Siemag contends that Tuscaloosa County has a strong interest in having the action adjudicated within its borders — so strong, Siemag says, that the trial court’s decision not to transfer the case was clear error.
However, at the time of Hagler’s injury and at the initiation of this action, both Hagler and his wife were residents of Walker County, a county with its own extensive history of mining coal. E.g., Drummond Co. v. Gunter, 588 So.2d 465, 466 (Ala.Civ.App.1991), and Thomason v. Mullinax, 403 So.2d 883, 885 (Ala.1981) (mentioning coal-mining operations on land in Walker County); Alabama Power Co. v. Cummings, 466 So.2d 99, 100 (Ala.1985) (noting site of Gorgas Mine, America # 3, in Walker County); and State v. Bankhead Mining Co., 279 Ala. 566, 568, 188 So.2d 527, 528 (1966) (“Bankhead Mining Company, Inc., has its principal] place of business in Walker County and is engaged exclusively in strip coal mining operations.”). This extensive history was noted by Dr. Robert Cox, an affiant whose testimony, in pertinent part, was quoted at length by the trial court in its order denying the motions to transfer:
“ Walker County is the heart of coal country in Alabama and coal mining is the primary industry in Walker County. Numerous coal miners live and work in Walker County and the United Mine Workers Union plays an important part in community affairs. Many of the miners commute to work in mines in surrounding counties such as Tuscaloosa County. The Walker County community has always had and should have, serious interest in coal mining safety.’ ”
Dr. Cox’s observations are borne out by the joinder by the plaintiffs of two individual co-employee defendants who undisput-edly reside in Walker County but commute to Tuscaloosa County to work in Jim Walter’s Brookwood mine. We further note that the trial court, in its order, took judicial notice that a large number of its case volume was, and historically had been, coal-mining-related cases, and it observed that it had “tried many coal-mine-related cases and [acquired] experience and knowledge of coal mining and its unique terminology.” It can properly be inferred that Walker County judges and jurors, no less than Tuscaloosa County judges and jurors, would likely be familiar with the work, machinery, and practices of the coal-mining industry.
The Legislature, for its part, has seen fit to declare in Ala.Code 1975, § 6-3-7(a), that civil actions against corporations “may be brought in any of the following counties” (emphasis added): (1) a county “in which a substantial part of the events or omissions giving rise to the claim occurred”; (2) the county of “the corporation’s principal office in this state”; or (3) the county where “the plaintiff resided ... *980 at the time of the accrual of the cause of action, if [the] corporation does business by agent in the county of the plaintiffs residence.”[3] Id. at § 6-3-7(a)(l)-(3). Likewise, under Ala.Code 1975, § 6-3-2(a)(3), claims for damages sounding in tort against an individual defendant may properly be commenced in the Alabama county where the defendant’s residence is located. As we have noted, Siemag has not challenged in its mandamus petition the trial court’s conclusion that Walker County is a proper venue under provision (3) given the presence in the action of the workers’ compensation claim against Jim Walter and the third-party tort claims against two Walker County residents, as well as the plaintiffs’ evidence tending to show that Jim Walter indeed does business by agent in Walker County. Although it is a valid principle of law that ordinarily “litigation should be handled in the forum where the injury occurred,” Ex parte Sawyer, 892 So.2d 898, 904 (Ala.2004), the Legislature clearly envisioned that persons in the plaintiffs’ situation would have the choice of bringing them action in the county of their residence.
As the trial court noted in its order, the defendants who sought transfer of the plaintiffs’ action to Tuscaloosa County were able to cite only two reported opinions in which an appellate court had concluded that the retention of a case in the county of a plaintiffs residence was outside the discretion of the trial court — Ex parte New England Mut. Life Ins. Co., 663 So.2d 952 (Ala.1995), and Ex parte Kane, 989 So.2d 509 (Ala.2008). Like the trial court, we conclude that both cases are distinguishable.
In New England Life, which was decided when § 6-3-7 provided that any personal-injury actions against corporations could be brought in the county of the plaintiffs residence at the time of suit if the corporation did business by agent there,[4] the fraudulent misrepresentations made to the plaintiff were allegedly uttered several years earlier, in the county where the plaintiff resided at that time, but the plaintiff subsequently moved to a second county where he filed suit. In New England Life, all pertinent documents were located in the first county, all the expected trial witnesses (except for the plaintiff) were located in the first county, and 10 separate actions involving different plaintiffs alleging the same wrongful conduct had been filed in the first county by the same plaintiffs’ attorneys. 663 So.2d at 956. Similarly, in Kane, the evidence showed that the alleged acts, omissions, and injuries forming the basis of the plaintiffs personal-injury claim all occurred in a county other than that of the plaintiffs residence and there was a pending “related action involving the same incident and the same witnesses” in the county to where the defendants had sought a transfer under § 6-3-21.1; further, the plaintiff in Kane filed no evidentiary response controverting the defendants’ transfer motions. 989 So.2d at 511, 513.
Unlike in New England Life and Kane, however, there is in this case no current prospect of burdensome parallel civil litigation in another county involving the same defendants and witnesses that would warrant trumping the plaintiffs’ choice of venue in their county of residence. In addi *981 tion, we note the opinion testimony of Dr. Scottie L. Twilley, Hagler’s treating physician, to the effect that because of Hagler’s numerous medical conditions (which include diabetes, hypertension, back and neck pain, and chronic obstructive pulmonary disease in addition to his amputations), “it would be far more ... medically appropriate for Mr. Hagler to attend court in Jasper, Walker County, which is much closer to his residence” and that “it would be in his medical best interest to minimize travel and attend court as close to his residence as possible.” There is no corresponding indication in New England Life or Kane that the plaintiffs’ ability to travel and to attend court would be negatively affected by a change of venue, and the trial court could properly, as it did, take into consideration Hagler’s physical infirmities in exercising its discretion to deny the requested change of venue.
Based upon the foregoing facts and authorities, we conclude that the Walker Circuit Court did not act outside the bounds of its discretion in ordering that the plaintiffs’ action remain in Walker County rather than transferring it to Tuscaloosa County. Therefore, we deny Sandvik’s untimely petition for a writ of mandamus in case no. 2090134 and Siemag’s petition for a writ of mandamus in case no. 2090016.
PETITIONS DENIED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. There is no indication in the materials submitted in support of the mandamus petitions that Jim Walter's motion to sever has been ruled upon.

. Our denial of Sandvik’s mandamus petition in case no. 2090134 in no way diminishes our appreciation for the candor of Sandvik’s counsel in admitting that that petition was not timely filed. We will treat the petition as indicating that Sandvik joins in Siemag’s petition in case no. 2090016, as Sandvik has also requested.

. A fourth, "catch-all” venue provision, § 6-3 — 7(a)(4), applies only if no county would be a proper forum under the other three corporate-venue provisions.

. Section 6-3-7 was amended in 1999 to provide that the county of the plaintiff’s residence at the time of the accrual of the cause of action is a proper venue in actions against corporations if the corporation does business in that county.